CASE 61—PETITIONS EQUITY—MAY 5.

# Levi v. City of Louisville.
# Reed v. City of Louisville.
# Ketchum v. City of Louisville.

APPEALS FROM JEFFERSON CIRCUIT COURT.

1. MUNICIPAL TAXATION—LICENSE TAX.—There is but one general system of assessment as to all property, under the present constitution, for the purposes of government, whether State or municipal, and neither the legislature nor a municipal corporation can classify property for taxation, or substitute a license tax for an *ad valorem* tax. If a license tax is imposed upon a business it must be in addition to, and not in lieu of, an *ad valorem* tax upon the property employed in the business.

2. A LICENSE TAX within the meaning of the constitution is not a burden on property, but on that which results from its enjoyment, or the conduct of the business or calling.

3. POWERS OF LEGISLATURE AS TO MUNICIPAL TAXATION.—The provision of the constitution prohibiting the legislature from imposing taxes on or for municipalities was not intended to leave the entire mode of assessment to the discretion of the general council, but merely to prohibit the legislature from determining the amount to be imposed and the objects to which it should be applied.

4. IRREGULAR LEVY ORDINANCE.—The omission of the general council of the city of Louisville to impose an *ad valorem* tax for a certain year upon personal property used in any business upon which a license tax was imposed, is not such an irregularity or mistake as renders the entire ordinance void, as the legal part of the levy can be separated from the illegal; and therefore, as the plaintiffs in these cases have been legally taxed they are not entitled to an injunction because of the irregularity. But as the mode of taxation does produce a discrimination against them, a court of equity should grant them relief by requiring the city government to correct the levy ordinance and assess the omitted property. But where the license fees which have been paid are so large as to indicate an intention to embrace the value of the property, they should be credited on the tax bill when collecting on the *ad valorem* system.

5. INJUNCTION.—If this were the case of an assessment for a local improvement, and not a levy for the revenue upon which the maintenance of the city government depends, the wrongful levy or assessment would authorize the interference of the chancellor by injunction.


LANE & BURNETT FOR APPELLANTS.

1. The imposition of a tax upon a trade, occupation or profession can not be made to operate as a tax upon the personal property used in, or as the instrumentality of, such trade, occupation or profession, or have the effect to release such property from *ad valorem* taxation; and it was not competent for the municipal legislature to so provide in the ordinance imposing taxes. (Constitution of Kentucky, secs. 3, 14, 171, 173, 174, 180, 181, 160, 16C. 156, 152, 158, 29, 57; Ky. Stats., secs. 2980, 2984, 2985, 3010, 3011, 3012, 3013, 3016, and 3025; Newton v. Atchison, 31 Kan., 151; Exchange Bank v. Hynes, 3 Ohio St., 15; City Railway Co. v. City of Louisville, 4 Bush, 481; Livingston v. City of Paducah, 80 Ky., 660; City of Frankfort v. Gaines, 88 Ky., 63; City of

Levi v. City of Louisville.

Newport v. South Covington, 89 Ky., 33; Louisville City Railway Co. v. City of Louisville, 4 Bush, 481; Baker v. City of Cincinnati, 11 Ohio St., 534; Glasgow v. Rouse, 43 Mo. 489; Birch v. The Mayor, &c., 42 Ga., 599; Verdeny v. Summerville, 82 Ga., 138; Mayor v. Weed, 84 Ga., 685; Sacramento v. Crocker, 16 Cal., 122; *Ex parte* Jno. B. Robinson, 12 Nev., 263; Louisiana Cotton, etc. v. The City of New Orleans, 31 La. Ann., 447; Lott v. Ross, 38 Ala., 156; Gatling v. Tarborough, 78 N. C., 132; Luntz Case, 6 Me., 414; Cooley on Taxation, pp. 5 and 6; Burroughs on Taxation, p. 154; Desty on Taxation, vol. 1, p. 306; Exchange Bank v. Hynes, 3 Ohio St. pp. 1-66; Zanesville v. Richards, 5 Ohio St., 589; Barbour v. City of Louisville, 6 Ky. Law Rep., 769; Loan Association v. Topeka, 20 Wall, 655.)

2. The provisions of the constitution and of secs. 2980, 2984 and 2985, of the Kentucky Statutes, being mandatory upon cities of the first class, the failure of the appellee to comply with them operated to make void the entire levy of taxes for its fiscal year ending August 31, 1894. (City of Louisville v. Louisville Gas Co., 15 Ky. Law Rep., 178; Ormsby v City of Louisville, 2 Ky. Law Rep., 66; sec. 79 Ky., 197; City of Louisville v. Cochran, 5 Ky. Law Rep., 833; s. c. 82, Ky., 15; Dumesnil v. City of Louisville, 4 Ky. Law Rep., 14; Slaughter v. City of Louisville, 12 Ky. Law Rep., 61; s. c. 89 Ky., 112; Shanks v. Stephens, 6 Ky. Law Rep., 525; Reamer v. City of Louisville, 6 Ky. Law Rep., 748; Cooley on Taxation, pp. 214, 214; French v. Edwards, 13 Wall, 506; Endlich on Int. of Statutes, sec. 431; Sutherland on Statutory Construction, sec. 454; State v. Brennan, 3 Zab., 509; Howell v. Brissell, 8 Bush, 499; Judge v. Taylor, 8 Bush, 208; Gilman v. Sheboygan, 2 Black, 510; Prim v. Bellville, 59 Ill., 142; Knowlton v. Supervisors, 9 Wis., 410; Weeks v. Milwaukee, 10 Wis., 242; Hersey v. Supervisors, 16 Wis., 185; Smith v. Smith, 19 Wis., 615; Henry v. Chester, 13 Vt., 460; Christy v. Lyon, 37 Cal., 242; People v. McCreary, 34 Cal., 432; Parkland v. Gaines, 89 Ky., 568; Mayor v. Weed, 84 Ga., 683; Verdery v. Summerville, 82 Ga., 138; Chesapeake, etc. v. Miller, 19 W. Va., 408; Cobb v. Elizabeth, 75 N .C., 1; Cheshire v. Commissioners, 118 Mass., 389; Dyer v. Farmington, 70 Me., 515; State v. Cumberland, etc., 40 Md., 22; Bright v. McCullough, 27 Ind., 223; Wilson v. Supervisors, 47 Cal., 91; Fletcher v. Oliver, 25 Kan., 289.)

3. Appellants are entitled to an injunction to restrain the collection of the illegal tax. (Norman v. Boaz, 85 Ky., 560; Baldwin v. Shine, 84 Ky., 510; Gates v. Barret, 79 Ky., 295; Ky. Stats., sec. 3008.)

PHELPS & THUM and J. D. REED of counsel.

Levi v. City of Louisville.

HUMPHREY & DAVIE, HELM & BRUCE, STONE & SUDDUTH
AND H. S. BARKER FOR APPELLEE.

1. It has always been found necessary, in municipal taxation, to
classify the subjects of taxation, and diversify the mode; so
as to suit the different characters of property, and fairly equal-
ize the burden borne by each. The three modes adopted have
been, the *ad valorem* tax, which is used to reach real estate
and chattels; the system by which the valuation of the prop-
erty is arrived at by considering its income or product and
charging a proportionate tax or "license" thereon—which amounts
in affect to a tax on the property itself (Welton v. Missouri ,91
U. S., 275); and license-fees on trades and occupations. (N.
O. R. Co. v. Commonwealth, 81 Ky., 494, 504, 506, 510; Rankin
v. Henderson, 9 Ky. Law Rep., 861; Home Ins. Co. v. New York,
134 U. S., 603; Railroad Tax Cases, 115, U. S., 337; Pacific Express
Co. v. Seibert, 142 U. S. 351.)

2. Unless such classification of subjects, and diversity of modes, of
taxation be adopted, uniformity and equality of taxation are
rendered impossible. (Pacific Express, Co. v. Seibert, 142 U. S.,
354; Home Ins. Co. v. New York, 134, U. S. 603; Railroad Com.
Cases, 81 Ky., 504, 506, 510.)

3. The new constitution does not render uniformity and equality
impossible, by prohibiting such classification and diversity of
mode; but, by expressly requiring uniformity and equality, it
shows that it intended the classification and diversification to
continue, through which alone such equality and uniformity
could be obtained. Otherwise it would be repugnant to itself.
(Holzhauer v. City of Newport, 94 Ky., 407; Pacific Railroad v.
Seibert, 142 U. S., 351.)

4. Secs. 169, 171, 172 and 174 of the new constitution apply to State
taxation only, and not to municipal taxation; which is provided
for in sec. 156 to 169 and 181. The varying needs of taxation
in the diverse municipalities is wisely left to the legislature
and local city governments. (La. v. Pilsbury, 105 U. S., 295;
Washington v. The State, 13 Ark., 752; Hamilton v. Ft. Wayne,
40 Ind., 172; Gilkerson v. Frederick, 13 Grattan, 579.)

5. Secs. 174 and 182 show that it was intended that "nothing" in
the new constitution should be construed as limiting the legis-
lature to the cast iron and necessarily inequitable rule of an
ad valorem tax on everything; but it was intended to allow the
alternative system of taxation based on the product or income of
the property, instead of the *ad valorem* method of valuation,
when found necessary to secure uniformity and equality. (Ill.
Cent. R. R. v. McLean, 17 Ill., 291; Railroad Tax Cases, 92 U..

S., 577; Sterling v. Higbee, 134 Ill., 457; L. & N. R. Co. v. City of Louisville, 16 Ky. Law Rep., 796.)

6. Sec. 174 will not be construed as authorizing a product tax, or franchise tax or license tax, in addition to, and cumulative to, the *ad valorem* tax; for that would be to authorize double taxation; which is never an allowable construction. (Livingstone v. City of Paducah, 80 Ky., 658; Bamberger, Bloom & Co. v. City of Louisville, 82 Ky., 343; Cooley on Taxation, 2d Edition, 227; Kimball v. Milford, 64 N. H., 406; Revenue v. Gas Company, 64 Ala., 269; Coatesville v. Chester, 97 Pa. St.,476.)

7. The failure of the assessor to assess all taxable property in the State does not render the assessment void, or warrant one whose property is taxed to avoid paying his own taxes. (Anderson v. Mayfield, 93 Ky., 230; Cooley on Taxation, 2d Edition, 216; Watson v. Princeton, 2 Metcalfe, Mass., 602; Wilson v. Wheeler, 55 Vt., 446; People v. McCrory, 34 Cal., 432.)

8. The plaintiff not having "done equity," by paying the taxes really due from him, can not enjoin the city from enforcing those claimed not to be due. (City of Louisville v. Board of Trade, 90 Ky., 410; State v. Railroad Tax Case, 92 U. S., 576; Ky. Stats.; sec. 2983.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellants, Levi, Reed and Ketchum, are the owners of real estate in the city of Louisville, and decline to pay the taxes on their realty by reason of the discrimination made by the ordinance levying the tax between real and personal estate, applying the *ad valorem* system to the one (realty) and a license tax to the other.

Levi and Reed, two of the appellants, filed a petition seeking an injunction to prevent the collection of tax on their real estate upon the ground that the levy ordinance imposing the license tax on personal property made the entire ordinance or levy void. A demurrer was filed to their petitions by the city, and on the hearing the chancellor adjudged the levy as made unauthorized and invalid, but refused to grant the injunction on the ground that this irregularity in the imposition of the tax, if illegal, afforded no reason for the chancellor's interference.

The appellant Ketchum filed his action in a different branch of the Jefferson Circuit Court, asking relief on the same grounds assigned by Levi and Reed, and to this petition the appellee (the city of Louisville), instead of demurring filed an answer alleging, in substance, that the burden of taxation had been equalized by the additional tax imposed by the city upon trades, occupations, and professions, and, therefore, nothing was lost to the city, or the burden of taxation on realty increased, by reason of the discrimination made as to the manner only of imposing the burden.

To this answer a demurrer was filed by Ketchum and overruled, and his petition dismissed, and all three of the tax payers have brought the case here for revision.

The relief sought is based on the ground that the ordinance levying this tax is void, for the reason the city council failed and refused to follow the mandate of the constitution, requiring all taxation to be uniform within the territorial limits in which the burden is imposed, and for the still greater reason of their failure to levy an *ad valorem* tax upon the personal as well as the real estate located within the city, and subject to taxation.

It is alleged in the petitions of Levi and Reed that the system adopted by the city of assessing personal property, by imposing upon it a mere license tax, increases the burden upon the realty, and in effect relieves from taxation personal property of the value of fifteen or twenty millions, that under the *ad valorem* system would be required to discharge its portion of the burden.

It is insisted by the city that no provision of the constitution is mandatory as to the mode of assessing personal property for taxation, and that the *ad valorem* system is to be applied alone to the assessment of real estate. That the power to classify property for taxation exists now with

those authorized to impose the burden, as it did under the former constitution, and, therefore, as to personalty, the substitution of a license tax in lieu of the *ad valorem* system upon the goods, wares and merchandise of the wholesale and retail merchants in the city, as well as other business and associations owning such property liable to taxation, may, by ordinance, be required to pay a license tax upon all their property, except their realty.

It is further contended by the attorney for the city that the provisions of the constitution in relation to the general system of taxation applies only to taxation for State and county purposes, and not to cities of the first class; and that as to the municipal governments of the first class the mode of imposing the tax is left (except as to real estate) to the judgment and discretion of the general council, the latter having the right to apply the *ad valorem* system to the one, and the license tax to the other.

The questions arising in these cases are of the highest importance to both the State and municipal governments, and if the system and mode of assessment of property for taxation is to be followed as it existed under the former organic law of the State, there is then but little difficulty in sustaining the right of the city to substitute as to personalty the license tax, instead of the *ad valorem* system, while, on the other hand, if there has been a fundamental change in the mode of assessment, in ascertaining the value of real and personal property, it must be followed, and the suggestion or argument that the mode adopted differing from the provisions of the organic law will produce the same result, that of uniformity and equality in imposing the burden, can not be permitted to control the decision of this question, even if more just and equal in its results.

The present constitution is more definite and specific in

its provisions in relation to taxation than our former consti-
tution, and to such an extent as to leave but little for the
legislature to do in having them executed.   The exercise of
legislative power is dispensed with as to the mode of assess-
ment, and the mode of taxation regulated by constitutional
enactments that under former constitutions was left to the
will of the legislature.

There is but one general system of assessment as to all
property, under the present constitution, for the purposes of
government, whether State or municipal, and in addition
taxation may be based on income, on licenses, and on fran-
chises, and a head or poll tax.   The *ad valorem* system re-
lates to the assessment and taxation of all property, the
income tax to the product or income from property, or from
business pursuits.   The license tax is one imposed on the
privilege of exercising certain callings, professions, or vo-
cations, that when collected go into the State treasury, and
when applied to municipal taxation is termed license fees.
A license based on franchises includes the ascertainment of
its value, and the mode of determining that value.    The
power to impose an income tax, a license or franchise tax, is
expressly given by the constitution to the legislature, and
the exercise of such powers by municipal governments must
be derived from legislative enactments, but there is no au-
thority, express or implied, conferred by the constitution on
either the State or municipal legislature to substitute a li-
cense tax in lieu of the *ad valorem* system.   No income tax
has been imposed by the legislature, but a license tax has
been imposed for State and county purposes, and the power
conferred upon municipalities to exact license fees, which is
in effect a license tax.

The contention, however, is that the city government, by
certain provisions of the constitution, can impose a license

tax upon personalty, and if legislative authority is required the general provisions of its charter confer such power and it becomes, therefore, necessary to examine the ordinance under which this license tax has been imposed by the city, and the provisions of the organic law from which it is claimed that power is derived, as well as the various sections of the constitution directing the mode of assessment and taxation.

The ordinance relating to the taxes for the fiscal year ending August 31, 1894, is as follows:

"Be it ordained by the general council of the city of Louisville that the following *ad valorem* tax is hereby levied for the fiscal year ending August 31, 1894, on lands and improvements, and on such personalty as is not used and employed in business paying a license tax for such business, and in each case on each $100 in value, but shall not be levied on any property exempt from taxation." The ordinance then proceeds to enumerate the purposes to which the tax is to be applied, and the rate upon each $100 in value of property to raise the necessary revenue.

The following sections of the constitution have a direct bearing on the question involved in this case. Sec. 171 provides: "Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws."

Sec. 172 provides: "All property, not exempted from taxation by the constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale;" and the section then proceeds to impose penalties on those authorized to assess values for a willful neglect of duty.

Sec. 174 provides: "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value unless exempted by this constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises."

Sec. 181 provides: "The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes. The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations, and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, cities and other municipal corporations to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions."

It is argued that from these several provisions of the constitution, and, particularly, secs. 174 and 181, is derived the authority to impose a license tax on the personal estate of those engaged in mercantile or business pursuits, and relieving it from that mode of assessment as to valuation claimed by the appellant to apply to all kinds of property, whether real or personal.

In support of the position taken by the learned judge of the law and equity court, that uniformity and equality in taxation may be reached by a diversity of taxation as to the various kinds of property, reference is made to the constitutions of other States where it has been held under pro-

visions requiring that all property shall be subject to tax-
ation according to its value, and shall be equal and uniform,
that such provisions have been held by the courts of those
States to apply to the methods of taxation for the State, and
not to municipalities.

The sections of the constitution of Indiana, Virginia,
Louisiana and Arkansas, from which the questions origin-
ated, are cited, and the cases of Gilkeson v. Frederick, 13,
Grat. 577; Washington v. State of Arkansas, 13 Ark., 752;
Hamilton v. Wayne, 40 Ind., 491; and Louisiana v. Pilsbury,
105, U. S., 278—all well-considered cases—would sustain
the contention of the city if the respective constitutions
were similar to this State.

In the State of Arkansas the value of property is to be
ascertained in such manner as the General Assembly may
direct, and the provision of each constitution referred to
on this subject confers in express terms upon the legis-
lature the power of prescribing the mode of reaching a just
valuation for taxing property, a power that existed with the
legislature of this State under the former constitution, be-
cause not prohibited, and the exercise of which was not
doubted, or when questioned the legislature is sustained by
this court.   The power to prescribe the mode of assessment,
or ascertaining the value of property, has been taken from
legislative control and fixed by the constitution, so there is
nothing left but to follow its provisions, and no authority
is given to the legislature to value or have property valued
but in one mode, with the right to impose an income tax, a
license tax, and a franchise tax, and if the provisions on the
subject of taxation were taken from the constitution and
inserted in legislative enactments, it would not be contend-
ed that the power to ignore the *ad valorem* system could be
abandoned as to personalty, and a license tax substituted.

Levi v. City of Louisville.

Under the former State constitution the right to impose one rate of taxation on one class of property, and a different rate on another class, was well understood, but in considering the provisions of the present constitution, we find the mode of assessment prescribed by that instrument requiring in plain terms *that all property shall be assessed for taxation at its fair cash value estimated at the price it would bring at a fair voluntary sale.* It would do violence not only to the intention of the framers of this instrument, but its letter and spirit, to hold that the system adopted by its provisions could be disregarded and another selected better suited to the business of the municipality, and more just and uniform in its terms. Nor do we find in the constitution a provision of any kind conferring on a municipal government the power to assess property for the purposes of revenue by imposing a license tax, nor has the legislature the power to authorize the imposition of a tax on the assessment of property, whether real or personal, in any other mode than that provided in the organic law.

The power of the legislature to tax a franchise is expressly conferred, and for that reason the mode of determining its value is pointed out by that body; and after creating a board of valuation to value every and all corporations, associations, or companies having or exercising any exclusive privilege or franchise, not allowed by law to natural persons, the power of this board is confined to the invisible estate of the corporation; and its real and tangible property, such as can be seen and valued by the assessor, is required to be omitted, or rather deducted from the value of the franchise, as found by the board, because this species of property is required to be assessed in the county or place where located, or its franchise exercised.

The legislature was careful when adopting a mode of val-

uing a franchise to omit from its valuation the tangible property, that must, under the provisions of the constitution, be assessed where located, by the State, county or municipal authorities, at its fair cash value, and whether or not this mode is nearer uniformity and equality than the mode contended for is not for this court to determine, nor can these provisions, so plain and unmistakable in their purpose, be made the subject of judicial construction. It must be conceded that if the mode of valuing a franchise had been fixed by the constitution, as is found in the statute, no power would exist with the legislature to adopt any other mode.

If, as contended by counsel for the city, this mode of assessment applies alone to the State, it would be difficult to determine under what provision of the constitution municipal governments derive the power to classify property for taxation, or even to impose taxes for any purpose; nor can it be assumed that in prohibiting the legislature from imposing taxes on or for municipalities the convention intended to leave the entire mode of assessment to the discretion of the general council, and give to such bodies the exercise of a power expressly denied to the representatives of the people.

The object of such a provision as placed the city government beyond legislative control as to imposing taxation was to prohibit the latter body from determining the amount to be imposed, and the objects to which it should be applied.

The words " license tax" imply a burden on that which is not property, but results from its enjoyment, or the conduct of the business or calling, and the legislature assembling after the adoption of the constitution, and composed of some of the leading members of the constitutional convention, understood the meaning attached to the phrase *license*

*tax*, and under the title of *revenue* and taxation, in subdivision 4 of chap. 109, imposed a *license tax* on certain kinds of business, such as a license on taverns, on retailing spirituous liquors, on saloons, on selling pistols and bowie knives, on ten pin alleys, peddlers, insurance companies, circuses and so on, showing plainly that its imposition as a tax upon property was not even considered. Its meaning is therefore clearly ascertained by its application, as understood by the legislature, and made still more so by the debates in the convention by every member who spoke upon the subject, and still plainer by the provisions of the constitution we are now considering.

The convention doubtless saw, after it had adopted a general system for assessing and taxing property, that the legislature should be clothed with a power that might be required to be exercised in imposing burdens for the exercise of these privileges under the police power of the State, and that such intangible rights as that of franchises and incomes, should be made the subjects of taxation, and therefore provided in sec. 174 that nothing shall be construed to prevent the General Assembly from providing for taxation based on incomes, licenses or franchises, and while this character of tax might be upheld even without express constitutional authority, it was doubtless thought best to be more specific on the subject. The members of the convention had no thought, when annexing to sec. 174 the power to the legislature to impose a license tax, that they were destroying the structure they had already constructed, in regard to the taxation of property, and that constituted the governing feature of taxation in that instrument, and by so doing had delegated the same power to the legislature and municipalities to classify property for taxation as under the former constitution.

Levi v. City of Louisville.

· Under the title of Municipal Corporations, sec. 2980, Kentucky Statutes, the legislature, in creating a charter for cities of the first class, provided: "Each city shall raise a revenue from *ad valorem* taxes and a poll tax and license fees, and to that end the common council of each city is hereby authorized and empowered to provide each year by ordinance for the assessment of all real and personal estate within the corporate limits thereof, subject to taxation for State purposes, *and shall levy an ad valorem tax on same* not exceeding the rates and limits prescribed by the constitution, . . . . and may impose license fees on stock used for breeding purposes, or on franchises, trades, occupations and professions, and provide for the collection thereof." And in sec. 2984 it is further provided, that the assessor shall assess at its fair cash value, as of the first of September of every year, all the lands, improvements and personalty subject to an *ad valorem* tax under this act. These license fees may be granted as the charter provides for no longer period than one year, *but may be granted for a shorter time.* It is apparent, therefore, that these license fees can not be imposed in lieu of the tax for revenue, as required by law, not only by reason of the provisions of the constitution, but the amount and period for which they may be granted repel such a conclusion.

The framers of the constitution left no discretion with the legislature as to the assessment and valuation of either real or personal property, or as to what property shall be taxed or exempted from taxation, and however wise or unwise the system may be, it is the mandate of the constitution that all must obey. It results, therefore, that the imposition of a license tax upon personalty whether used or not in a business for the exercise of which license fees are paid, or a license tax imposed, is not warranted by the constitution. As

Levi v. City of Louisville.

the judgments in these cases were for the city and all relief denied the tax-payer, it is for this court to determine the remedy they have, if any, and the solution of the question is not free from difficulty. If it involved a question only as to local improvement and an assessment for such a purpose, we would have but little trouble in holding that the constitution did not affect such questions, when the burden is imposed by reason of local benefits, for in such a state of case a wrongful levy or assessment would authorize the interference of the chancellor by injunction, but in these cases the assessment, or rather levy, made by the ordinance is for the revenue upon which the maintenance of the city government depends, and to say to one tax-payer you are not required to pay your taxes under such an ordinance would in effect become a release for all taxpayers, and leave the city without any revenue, or the power to collect it. The chancellor should well hesitate before staying by a judicial order the hands of the tax collector from recovering or collecting these public dues.

This levy ordiance is not, however, void; and while levying an *ad valorem* tax for the fiscal year ending August 31, 1894, on lands and improvements, and on such personalty as is not used and employed in a business not paying a license tax for such a privilege, the general council has omitted to tax the personalty, *ad valorem*, when it is used in a business upon which a license tax has been imposed. It is not such an irregularity or mistake as renders the entire ordinance void, but does produce a discrimination between tax-payers, and is such an immunity from taxation as compels the chancellor to afford the complaining tax-payer some relief, and that relief must consist in the chancellor's requiring the city government to comply, in imposing such a

burden, with the organic law of the State and the charter creating the municipal government.

The legal part of this levy can be separated from the illegal, and the omission to assess certain personal estate in the proper mode will not render the entire ordinance inoperative.    (1 Desty on Taxation, 468.)    The chancellor has no power to appoint an assessor, or to correct the error, but has the power to compel the city government to do so, in order to remedy the wrong resulting from a mistaken construction by the council of the constitutional provision affecting this question.

The appellants have been legally taxed, and are complaining that the property of others entitled to bear a part of the burden has in effect been exempted, and if the averments of the petition are true, the failure to impose the tax on this personalty must necessarily increase the tax on those who have been compelled to pay on the same kind of property under the *ad valorem* system.    Nor is it necessary that the chancellor should be satisfied that such a discrimination exists.    The fact that a license tax is imposed on the personalty in the one case, and the *ad valorem* in the others, is sufficient, as when imposed as a part of the license tax it is a violation of the charter of the city as well as the constitution, and it is no answer to say that the one mode is as just as the other.

Mr. Cooley in his work on Constitutional Limitations, 5th ed., p. 279, says:  "There is and must be an inherent power in every town to bring the money necessary for the purposes of its creation into the treasury, and if its course is obstructed by ignorance or mistakes of its agents, they may proceed to enforce the end and object by correcting the means."

The existence of the municipality itself depending upon

the collection of this revenue, the chancellor should require such steps to be taken by the council to collect this tax as if the ordinance had been without error in the first place. That is, the council should amend the ordinance and have this property assessed, applying the *ad valorem* system as of the date at which the property under the ordinance was required to be assessed.

The chancellor can not, it is true, lessen the amount of tax levied by the ordinance by reason of the future collection of tax from this omitted personal property, but it must be assessed and taxed, the taxes when collected forming a part of the revenue of the city, and redounding to the benefit of all the tax-payers.

The chancellor has properly refused to grant the injunction, but to say that such a taxation can be imposed and no relief granted would be to sanction not only an unjust discrimination but a plain violation of the constitution, and no remedy offered.

A court of equity, under such circumstances, must afford some relief, and we perceive no reason why this omitted property should not be required to pay this tax.

The charter of the city, in order to provide against such mistakes or omissions on the part of the general council, and to correct such errors, provides: "If any year the general council shall fail to pass a levy ordinance, or if the levy ordinance in any year shall be invalid or inoperative, the rate of taxation for that fiscal year shall be the same as it was the year before, item for item."

While that section of the charter may apply as to the rate of taxation, there must be difficulty in proceeding under it without an assessment. The rate of tax is fixed, and the property omitted from taxation assessed by correcting the levy ordinance, and then with the proper assessment the

Levi v. City of Louisville.

tax may be collected. While license fees can not be imposed so as to embrace the value of property, and the amount to be imposed is with the council, where this has been done in such a state of case the council should be directed to credit the amount paid; if any, on the tax bill, when collecting on the *ad valorem* system. This suggestion is made in view of the fact that some of the license fees authorized to be imposed, as appears from the statute, indicate an amount approximating values, and if so, the sum should be deducted from the tax bill, and of this the council must be the judge.

The city being the defendant its common council should be required to correct the levy ordinance, and to have assessed the personal property (omitted from the *ad valorem* system) existing at the date of the assessment under the ordinance in which the error was committed, its value to be ascertained as of the date at which the original assessment was required to be made.

This mandate is based on the idea that no steps have been taken to correct the error of the council.