CASE 7.—ACTION BY THE HENDERSON BRIDGE COMPANY AGAINST THOMAS H. ALVES, COLLECTOR, AND OTHERS TO ENJOIN THE COLLECTION OF A FRANCHISE TAX UPON AN · ASSESSMENT MADE BY THE CITY ASSESSOR OF HENDERSON.—February 16.

## Henderson Bridge Co. v. Alves, &c.

Appeal from Henderson Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for defendants, plaintiff appeals. Reversed.

Taxation—Corporate Franchise—Cities of Second Class—Acts Extending to Third Class Cities—Constitutionality.

On March 19, 1898, the General Assembly passed an act· entitled "An Act concerning the assessment and valuation for taxation of corporate franchises and tangible property by cities of the first and second class. By an act approved March 13, 1900, the provisions of this act were extended to include cities of the third class, the title being "An Act to amend and re-enact an act approved March 19, 1898, entitled An Act concerning the assessment and valuation for taxation of corproate franchises and intangible property by cities of the first and second class." Held—That as the title to the original act nor to the amended act gave no notice that it affected in any way third class cities, it is invalid under section 51 of the Constitution, which provides that, "no law enacted by the General Assembly shall relate to more than one subject and that shall be expressed in the title."

HELM, BRUCE & HELM for appellant.

J. B. HARRISON, JR., and YEAMAN & YEAMAN of counsel.

### POINTS AND AUTHORITIES CITED.

1.  It is not competent under a title of an act which purports

Henderson Bridge Co. v. Alves, &c.

to amend the act governing cities of the first class to incorporate provisions applying to cities of the third class. (Childs v. Monroe, 4 Met., 74; Rush v. Sebree, 12 Bush, 198; Jones v. Thompson, 12 Bush, 394; Purnell v. Mann, 105 Ky., 94; Parkland v. Gates, 88 Ky., 562; Wulftange v. McCollum, 83 Ky., 361.)

2. It is improper, in arriving at the valuation of property, to capitalize the gross receipts, taking no account of the money necessarily expended in earning those gross receipts.

3. In apportioning the assets of a bridge company operating in two States, it should be done in strict accordance with the statute which requires that proportion of the value which the gross receipts in Kentucky bears to the total gross receipts should be treated as the value in Kentucky, and it is not proper to disregard that statutory method of apportionment, the board having no discretion in that matter. (S. W. Hager v. American Surety Co., decided January 23, 1906.)

J. L. DORSEY, City Attorney, for appellees.

The constitutionality of the act under which this franchise has been assessed is not questioned in the petition, or anywhere in the pleading. The plaintiff rests its case, as stated in the petition, on three propositions:

First—"Because the assessment was grossly excessive."

Second—"Because improper apportionment had been made of the value of the property between the States of Kentucky and Indiana."

Third—"Because the plaintiff was entitled to have its property assessed on the same basis, to-wit: At not above 80 per cent of its cash value, just as other property and the general mass of property in the city of Henderson belonging to persons and corporations have been assessed."

We submit, that all three of these propositions show that there is some tax due the city of Henderson.

If that be true, then this injunction cannot be granted or perpetuated.

First—The assessment could not be grossly excessive, unless something was due to the city.

Second—There could not be an improper apportionment of the value of this property between Kentucky and Indiana unless some part of the property was here in the city, and if in the city, it owed the taxes.

Third—The statement, that plaintiff was entitled to have its property assessed on the same basis as other property, to-wit:

At not above 80 per cent of its fair cash value, is an admission that this property should be assesed at some value, and that it would owe some amount of taxes.

As a matter of fact this is not an excessive valuation. This franchise valuation as shown by T. D. Alves' testimony was higher in 1896 and 1900 than for 1904. And this plaintiff as will be shown by said Alves' testimony, paid more franchise tax in 1908, 1900, 1897 and 1896 than is claimed in this suit.

### AUTHORITIES CITED BY APPELLEE.

Phillips v. Covington & Cincinnati Bridge Co., 2 Met., 221; Swift v. City of Newport, 7 Bush, 37; O'Brannon v. L. & F. Ry. Co., 8 Bush, 350; L. & O. T. Ry. Co., v. Ballard, 2 Met., 169; Louisville Ry. Co. v. Commonwealth, 20 Reporter, 1514; Henderson Bridge Co. v. Negley, 23 Reporter, 748; Louisville & Jeffersonville Ferry Co. v. Commonwealth, 22 Reporter, 449; Commonwealth v. Covington & Cincinnati Bridge Co., 24 Reporter, 1179; Paducah Street Ry. v. County of McCracken, 20 Reporter, 1294; Carrington v. Shinkle, 25 Reporter, 73; Royal Wheel Co., v. Taylor Co., 20 Reporter, 960; Mossett v. Newport & Cincinnati Bridge Co., 20 Reporter, 1969 and 1294; Negley v. Henderson Bridge Co., 21 Reporter, 1150; Russell v. Carlisle, 10 Reporter, 27; Louisville v. Board of Trade, 90 Ky., 409; Thompson v. City of Lexington, 104 Ky., 170; Gibson v. Beecher, 1 Bush, 145; Alburqurque Nat. Bank v. Parea, 147 U. S. R., 91; Bundy v. Summerland (September 25, 1895)), 41 N. E. R., 322; Sessions act, 1898, page 96, and 1900, page 89; Ky Stats., sections 2984 and 2984A and 4079; Acts, 1900, page 10, 12, 14, 23, 39, 50, 75; High on Injunctions, 490, 491, 497, 500 (518).

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

This suit was brought by the Henderson Bridge Company to enjoin the collection of a franchise tax upon the assessment made by the city assessor of Henderson. The circuit court held the assessment valid, and the bridge company appeals.

The first question in the case is as to the validity of the act under which the assessment was made. On March 19, 1898, the General Assembly passed an act entitled ''An act concerning the assessment and valua-

tion for taxation of corporate franchises and intangible property by cities of the first and second class.'' Acts 1898, p. 96, c. 38.  This act gave the local assessor of cities of the first and second class power to assess for taxation the corporate franchises of certain corporations; the previous law requiring these assessments to be made by the State board.  By an act approved March 23, 1900, the provisions of this act were extended to include cities of the third class. The title of the act of March 23, 1900, is as follows: ''An act to amend and re-enact an act approved March 19, 1898, entitled 'An act concerning the assessment and valuation for taxation of corporate franchises and intangible property by cities of the first and second class.' ''   Acts 1900, p. 89, c. 29.  It will be observed that the act of March 19, 1898, only applied to cities of the first and second class.  The act of March 23, 1900, extends the provisions of the former act to cities of the third class; but there is nothing in the title of the act to indicate that the amendment applied to any other cities than those of the first and second class.  In other words, in amending an act which by its title as well as its body applied only to cities of the first and second class, the Legislature extended its provisions to cities of the third class without anything in the title of the amending act indicating that the amendment related to anything more than cities of the first and second class.  The Constitution requires the Legislature to divide the cities and towns of the State into six classes and to provide by general laws for their government.  The Constitution also provides that an act shall relate to only one subject, and that this must be expressed in the title.  There is nothing in the title of the act of March

23, 1900, to show that it in any way applies to cities of the third class. The purpose of the constitutional provision is that the title of an act must be such as to inform members of the General Assembly and others as to the subject of legislation. The title of the act of March 23, 1900, would inform the members of the General Assembly that the assessment and valuation for taxation of corporate franchises and intangible property by cities of the first and second class was regulated by the act; but it would not inform them that any regulation was made as to cities of the third class. Those interested in cities of the first and second class would understand from the title that these cities were interested in the act; but when the body of the act was read they would see that it made no change in the law respecting them, and so would take no interest in the amendment. On the other hand those interested in third-class cities would not be informed by the title of the act that legislation as to these cities was contemplated, and so would not have their attention directed to the act. In this way such legislation might go through, when, if the title showed what was proposed, it might be defeated.

The government of third-class cities is not germane to the government of first and second class cities in the sense that an act which professes to govern only cities of the first and second class can be made to govern cities of the third class when there is nothing in the title to so indicate. To illustrate: If the act of March 19, 1898, had provided that it should apply to all cities and towns in the State, it would hardly be maintained that this subject was expressed by the title referring only to cities of the first and second class. If such a thing were allowable, then under an

act which by its title regulated first-class cities there might be included provisions governing all other classes of cities. The title of the amended act is no broader than the title of the original act, and if it is valid as to third class cities then under the same title regulations might have been inserted governing all other classes of cities and taxing districts. This manifestly would not be good; but, if cities of the third class may be included under this title by one act, then every other class of municipalities might be added under a similar act with the same title, and thus the Legislature might accomplish by piecemeal by a series of acts what it manifestly could not do if all the different taxing districts and municipalities had been inserted in the body of the first act under the same title. In Cooley on Constitutional Limitations, p. 144, the effect of provisions requiring that an act shall relate to only one subject and that this must be expressed in the title is discussed, and from the decisions the rule is summed up as follows: ''It may therefore be assumed as settled that the purpose of these provisions was, first, to prevent hodge-podge or ''log-rolling'' legislation; second, to prevent surprise or fraud upon the Legislature by means of bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.'' The title to the act in question gave no notice that it affected in any way third-class cities, and we are constrained to hold that

it is invalid under the Constitution as to such cities. This conclusion is sustained by Childs v. Monroe, 4 ton v. Woolfork, 79 Ky., 13; 3 Ky. Law Rep., 42; Parkland v. Gaines, 88 Ky., 562; 11 S. W., 649; 11 Ky. Law Rep., 64.

In amending the charter of a corporation the Legislature might properly regulate the powers of the corporation. Phillips v. Covington Bridge Company, 2 Metc. 221; Swift v. Newport, 7 Bush 37, and O'Bannon v. L. C. & L. R. R. Co., 8 Bush, 350, rest on this ground. In levying a tax on peddlers and providing for a license to be taken out by them, the Legislature may properly provide regulations as to how the business done under the license shall be conducted. This is germane to the general subject of the act. The cases of Rumley v. Hall, 107 Ky., 349; 21 Ky. Law Rep., 1071; 54 S. W., 5, and Jacobs' Admr. v. L. & N. R. R. Co., 10 Bush, 263, are based on the ground that there was a natural connection between all parts of the act. But none of these cases conflict with Childs v. Monroe, Rush v. Sebree, or the cases following them. The act being void as to third-class cities, it results that the assessment of appellant's franchise must be made under the former law by the State board, and if that board has not made the assessment or certified it to the municipal authorities it should yet do so. Southern Railway v. Coulter, 113 Ky., 657; 24 Ky. Law Rep., 203; 68 S. W., 873.

Judgment reversed, and cause remanded for a judgment enjoining the collection of the tax based on the assessment made by the city assessor.