## Board Trustees Erlanger Graded Common School District, et al. v. Tate.

(Decided October 15, 1913).

## Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Constitutional Law—Purpose of Section 51 of Constitution.—The purpose of section 51 of the State Constitution, which provides that "'No law enacted by the General· Assembly shall relate to more than one subject, and that shall be expressed in the title", is, that the title of an Act must be such as to inform members of the .General Assembly and others as to the subject of the legislation.

2. Constitutional Law—Title of Act of Legislature—Courts Cannot Enlarge Scope of.—The courts cannot enlarge the scope of the title of an Act of the Legislature; they are vested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation; and it is no answer to say that the title might have been made more comprehensive, if, in fact, the Legislature have not seen fit to make it so.

3. Constitutional Law—Act of Legislature—"Special Act Schools" to Levy· Special Tax Violative of Section 51 of Constitution.—An act of the Legislature authorizing. "Special Act Schools" and "all other graded schools of this Commonwealth to levy a special school tax", violates section 51 of the Constitution, in so far as it applies to the common schools established and operating under the general laws of the State, because the title to said act deals only with "Special Act Schools", and makes no reference to the other graded schools of the Commonwealth.

CHARLTON B. THOMPSON for appellants.

O. M. ROGERS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In 1903 the appellant, a graded common school district, was established in the manner provided in section 4464 of the Kentucky Statutes, and an *ad valorem* tax of 25 cents on each one hundred dollars worth of propetry in the district was voted by the people for the purpose of maintaining the graded school.

In 1907, under the authority of the general graded school law, an election was held and bonds were issued by the board of trustees for the purpose of raising a fund to procure a site and erect a suitable school building; and, an *ad valorem* tax of 25 cents on each one hun-

dred dollars worth of property in the district was levied for the purpose of paying the interest on and creating a fund for the redemption of the bonds. Thereafter, until 1912, an *ad valorem* tax of 50 cents was levied and collected for the purposes indicated. In June, 1912, the board of trustees adopted a resolution levying an *ad valorem* tax of 75 cents on all property in the district subject to taxation, and provided that 50 cents of the tax should be used for the purpose of maintaining the school, and 25 cents should be used to pay the interest on and to redeem the bonds. When the sheriff undertook to collect the tax levied by this resolution, the appellee, Tate, on behalf of himself and other taxpayers in the district, brought this suit to enjoin the collection of the tax in excess of 50 cents, upon the ground that the board of trustees exceeded their authority in levying a tax in excess of the statutory limit. The lower court sustained the contention of Tate, and the board appeals.

From what has been said it will be noted that a property tax of 25 cents was voted by the people in the graded school district for the purpose of maintaining the school, and an additional property tax of 25 cents was voted for the purpose of paying interest on and redeeming the bonds that were issued to pay for a school building; and so the authority of the trustees to levy an additional tax for the purpose of maintaining the school is not to be found in any vote of the people of the district, as the question of the levy of this 25 cents was not submitted to the people. But the trustees claim that the right to impose this additional tax was conferred upon them by an act of the Legislature, approved March 14, 1912, and entitled "An Act to empower the board of trustees of graded schools operating under special charters, known as Special Act Schools, to levy tax for maintenance." Acts 1912, p. 235.

Section 1 of said Act reads as follows:

"That those graded schools in this Commonwealth, operating under special charters granted by the General Assembly, and known as Special Act Schools, which do not now levy as much as fifty cents on each one hundred dollars worth of taxable property within their respective districts, shall have the power, and their charters are hereby so amended so as to empower them to levy any rate of tax for operating expenses not to exceed fifty cents on each one hundred dol-

lars worth of taxable property within their respec-
tive districts *and all other graded schools of this Com-
monwealth,* and that their boards of education be, and
same are hereby authorized to exercise this power when
in their judgment the demands of the school make it
expedient.''

The decision of the lower court that the board of
trustees was without authority to levy the additional
property tax of 25 cents for the purpose of maintain-
ing the school was put upon the ground that the title
of the act of 1912 was not broad enough to authorize
the imposition in the body of the act of a tax for the
benefit of graded schools established under the general
laws of the State; and consequently so much of the
body of the act as empowered boards of trustees of
graded schools, not organized under special acts of the
Legislature, to impose a tax authorized by the act was
invalid because it violated section 51 of the Constitu-
tion. Whether this construction of the act is correct
presents the only question raised on the appeal.

So much of section 51 of the State Constitution as
is pertinent to the inquiry reads as follows:

''No law enacted by the General Assembly shall re-
late to more than one subject, and that shall be ex-
pressed in the title.'' *   *   *

It appears from the act, as well as from the general
school law, that there are in the State two classes of
graded schools, one being established and operating
under special acts of the Legislature, and the other
class being established and operating under the general
laws of the State found in sections 4464-4500a of the
Kentucky Statutes. It is also quite evident from the
wording of the act that, as originally drawn, it was only
intended to apply to those graded schools described in
the title and in the body of the act as ''Special Act
Schools,'' and that the words ''and all other graded
schools of this Commonwealth,'' were subsequently in-
serted in the body of the act by way of amendment.

Constitutional provisions similar to section 51 above
quoted are to be found in nearly all of the modern
State Constitutions. Their purpose is indicated by
Cooley in his ''Constitutional Limitations'' (7th Ed.),
page 205, as follows:

''It may, therefore, be assumed as settled that the
purpose of these provisions was: First, to prevent
hodge-podge or 'log-rolling' legislation; second, to pre-

vent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

Again, on page 212, Cooley says:

"The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if in fact the Legislature have not seen fit to make it so. Thus, 'an act concerning promissory notes and bills of exchange,' provided that all promissory notes, bills of exchange, *or other instruments in writing,* for the payment of money, or for the delivery of specific articles, or to convey property, or to perform any other stipulation therein mentioned, should be negotiable, and assignees of the same might sue thereon in their own names. It was held that this act was void, as to all the instruments mentioned therein except promissory notes and bills of exchange; though it is obvious that it would have been easy to frame a title to the act which would have embraced them all, and which would have been unobjectionable."

In support of his text, *supra,* Cooley cites McWherter v. Price, 11 Ind., 199; Rushing v. Sebree, 12 Bush, 198; Jones v. Thompson, 12 Bush, 394, and other cases.

In Henderson Bridge Co. v. Alves, 122 Ky., 52, we pointed out several instances in which this court had applied the rule, saying:

"In amending the charter of a corporation the Legislature might properly regulate the powers of the corporation. Phillips v. Covington Bridge Company, 2 Metc., 221; Swift v. Newport, 7 Bush, 37, and O'Bannon v. L., C. & L. R. R. Co., 8 Bush, 350, rest on this ground. In levying a tax on peddlers and providing for a license to be taken out by them, the Legislature may properly provide regulations as to how the business done under the license shall be conducted. This is germane to the general subject of the act. The cases of Rumley v.

Hall, 107 Ky., 349; 21 Ky. Law Rep., 1071; 54 S. W., 5, and Jacob's Admr. v. L. & N. R. R. Co., 10 Bush, 263, are based on the ground that there was a natural connection between all parts of the act."

In our opinion, Henderson Bridge Co. v. Alves, supra, is decisive of the case before us and requires its affirmance. In that case the Legislature had passed an act in 1898 concerning the assessment of corporate franchises and intangible property "by cities of the first and second class," and by an act of 1900 the provisions of the act of 1898 were extended to cities of the third class. By its title, however, the amendatory act of 1900 purported merely to amend and re-enact the act of 1898 entitled "An act concerning the assessment and valuation for taxation of corporate franchises and intangible property by cities of the first and second class." The body of the act of 1900 extended the provisions of the act of 1898 to cities of the third class; but there was nothing in the title of the act to indicate that fact.

In condemning the act, we said:

"The purpose of the constitutional provision is that the title of an act must be such as to inform members of the General Assembly and others as to the subject of legislation. The title of the act of March 23, 1900, would inform the members of the General Assembly that the assessment and valuation for taxation of corporate franchises and intangible property by cities of the first and second class was regulated by the act; but it would not inform them that any regulation was made as to cities of the third class. Those interested in cities of the first and second class would understand from the title that these cities were interested in the act; but when the body of the act was read they would see that it made no change in the law respecting them, and so would take no interest in the amendment. On the other hand, those interested in the third class cities would not be informed by the title of the act that legislation as to these cities was contemplated, and so would not have their attention directed to the act. In this way such legislation might go through, when, if the title showed what was proposed, it might be defeated.

"The government of third class cities is not germane to the government of first and second class cities in the sense that an act which professes to govern only cities of the first and second class can be made to govern

cities of the third class when there is nothing in the title to so indicate.''

See, also, Weimer v. Commissioners Sinking Fund of Louisville, 124 Ky., 377.

We see no escape from the conclusion that so much of the act in question, as undertakes to authorize the trustees of graded schools operating under the general laws of the State, to levy the tax enjoined, is violative of section 51 of the Constitution. They are not germane to special act schools and are not mentioned in the title of the act.

Judgment affirmed.