## Thompson v. Commonwealth.

(Decided May 14, 1914.)

Appeal from Jefferson Circuit Court
(Criminal Division).

1. Constitutional Law—Title of Act—Insufficient Title.—Section 51 of the Constitution provides that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." Therefore, where an act, entitled "An Act to appropriate money for the benefit of the Houses of Reform, to provide funds to pay the existing deficit and to make improvements at the Houses of Reform," contained twelve sections appropriating money and providing for improvements, and two sections relating to the commitment and control of juvenile offenders, the two sections relating to juvenile offenders were void, because not expressed in the title.

2. Constitutional Law—Elimination from Act of Sections That Are Void Because Not Expressed in the Title.—Where an act contains sections that are germane to the title and others that are

not, the ones that are not may be declared void and the remainder upheld.

3. Constitutional Law—Sufficiency of Title.—Where the title expresses with reasonable certainty the subject-matter of the act, or the subject matter of the act may by liberal construction be said to be expressed in the title, or has a natural connection therewith, the legislation will be upheld.

4. Constitutional Law—Purpose of Provision Requiring Title to Express Subject Matter of the Act.—The purpose of Section 51 of the Constitution was to enable any person reading the title of an act to get a general idea of what the act treated of or contained, and members of the Legislature, as well as the public, have a right to rely on the title as indicating the subject-matter of the act and to assume that the act contains no legislation that is not embraced in a general way by the subject expressed in the title.

5. Constitutional Law—Title of Act—Misleading and Insufficient Title.—Where the title of an act is so expressed as to limit its purpose to certain specific parts of a general subject, the subject-matter of the act must be confined to the particular parts of the general subjects that are expressed in the title, and if sections are inserted in the act that are outside the scope of the purpose of the act as expressed in the title, they should be eliminated although they may relate to the general subject-matter covered by the title.

LOGAN N. ROCK for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, under an indictment charging him with the crime of robbery, was found guilty by a jury. After the verdict was returned and before sentence was passed or judgment entered, the appellant filed his affidavit showing that he was then only nineteen years of age and moved the court to adjudge that he be confined in the State Reform School at Lexington for the time and in the manner provided by the Act of March 26, 1908, now section 2095a, subsection 19a, of the Kentucky Statutes. The court overruled his motion and committed him for a period of from two to ten years in the State Reformatory at Frankfort.

The only question submitted on this appeal is the validity of so much of the Act of 1908 as relates to the commitment of minor convicts to the House of Reform. The trial court ruled that so much of the Act as is here under consideration was unconstitutional, because the

Act did not conform to sec. 51 of the Constitution reading as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The title of the Act of 1908 reads: "An Act to appropriate money for the benefit of the Houses of Reform, to provide funds to pay the existing deficit and to make improvements at the Houses of Reform." Following the preamble setting out the reasons why a deficit existed and the necessity for additional funds to erect new buildings and equip them, the Act, in sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 appropriates various sums of money for specific equipment and improvements, and provides how the money so appropriated shall be expended. Section 13 reads:

"That any and all juvenile or first offenders of the age of 21 years or under committing any crime whereby punishment in the State prison or School of Reform is contemplated, shall be sentenced by Court of Jurisdiction to the House of Reform, and commitment and method of conveying said offenders thereto shall be the same as to State Penitentiaries."

Section 14 reads: "All inmates so sentenced to House of Reform in lieu of State Penitentiary shall be subject to the same parole provisions as govern parole of penitentiary inmates

"Any inmate so sentenced who may be incorrigible, or whose contact with the other inmates may be detrimental, may by the order of Board of Commissioners be transferred to a State Penitentiary.

"Courts of Jurisdiction shall fix an indeterminate sentence for minor offenders, which shall keep such offenders in confinement until they have reached the age of 21 years, but such offenders by reason of good conduct, industry and obedience to rules of the Institution may be earlier discharged or paroled by Board of Commissioners."

It will be observed that sections 1-12 inclusive are germane to the subject matter of the title, but that sections 13 and 14 have not the remotest connection with the title. There is not a word in the title from which

any person could infer that the Act contained the subject-matter of sections 13 and 14.

There has never come under our notice an Act of the Legislature that disregards so thoroughly sec. 51 of the Constitution as does the legislation contained in these sections. If the validity of these sections should be sustained, so much of sec. 51 as declares that "No law enacted by the General Assembly shall relate to more than one subject and that shall be expressed in the title," would have no meaning or effect whatever, and the Legislature would be at liberty to incorporate in any Act, under any title, any number of subjects and any legislation, without reference to whether it was germane to or expressed in the title or not.

The title of this Act, and the first twelve sections, relate exclusively to the appropriation of money for the benefit of the Houses of Reform, while sections 13 and 14 are devoted entirely to the treatment and punishment of offenders against the law who are under twenty-one years of age, and it is very evident that as originally introduced the Act only contained twelve sections, and that while the Act was on its passage sections 13 and 14 were added without giving any thought to the title of the Act or to the incongruity between these sections and the title or other sections. It is also manifest that sections 13 and 14 can be eliminated from the Act without interfering with or affecting in any manner the subject-matter of the other sections, and when this can be done, the rule, as laid down in Wiemer v. Comr's. Sinking Fund of Louisville, 124 Ky., 377, is "That when a subject foreign to the title is introduced into the body of an act, if it is so separate and distinct from the remainder of the subject-matter of the legislation that it may be omitted without affecting the otherwise valid portions, then the unconstitutional part will be omitted and the remainder allowed to stand. Such is the case here. Section two has no natural connection with the remainder of the act. Its omission leaves a valid and complete statute; and therefore we hold that section two is invalid for the reason given, but the remainder of the statute is constitutional." To the same effect are: Jones v. Thompson, 12 Bush, 394; Fuqua v. Mullen, 13 Bush, 667; Brown v. Moss, 126 Ky., 833.

It is suggested in argument that as the title of the Act relates to the Houses of Reform, it was permissible, under sec. 51 of the Constitution, to insert in the body of

the Act sections containing subject-matter that related in any manner to the Houses of Reform; and, taking this proposition as a basis, it is urged that, as sections 13 and 14 have some relation to the Houses of Reform, they do not offend the Constitution. We have considered many cases in which legislation was assailed on the ground that it was violative of sec. 51 of the Constitution, and it has often been written that where the title expresses with reasonable certainty the subject-matter of the Act, or the subject-matter of the Act may, by liberal construction, be said to be expressed in the title, the legislation will be upheld. Or, as said in Hyser v. Com., 116 Ky., 410:

"This court has repeatedly announced, in effect, that no provision of a statute directly or indirectly relating to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the inhibition of sec. 51 of the Constitution." To the same effect are: Eastern Ky. Coal Lands Corp. v. Com., 127 Ky., 667; Phillips v. Cin. & Cov. Bridge Co., 2 Met., 219. So that if the title of this Act had read, "An act in relation to" or "An act concerning the Houses of Reform," then the title would have given notice to every person interested that the body of the Act treated of matters generally relating to or concerning the Houses of Reform, and would have allowed much latitude in the subject matter of the act. Conley v. Com., 98 Ky., 125; Hoke v. Com., 79 Ky., 567; Burnside v. Lincoln Co. Court, 86 Ky., 423; Collins v. Henderson, 11 Bush, 74; Com v. Bailey, 81 Ky., 395.

But in no instance has this rule been extended so as to legalize legislation that departs so radically from the title of the Act as do the sections here under consideration. Here the title of the Act limited the scope of the legislation to the appropriation of money for the benefit of the Houses of Reform, and this limitation in the title reasonably and naturally conveyed the meaning that the body of the Act was confined to the appropriation of money and no other subject.

The purpose of the constitutional provision was to enable persons reading the title of an act to get a general idea of what the act treated of or contained, and it has come to be a recognized legislative practice for members and others interested in legislation to read the title of acts and gather therefrom in a general way at least the subject-matter of the act, and under the author-

ity of this constitutional provision members of the Legislature, as well as the public interested in legislation, have the right to rely on the title as indicating the subject-matter of the act and to assume that the act contains no legislation that is not embraced in a general way by the subject expressed in the title. But if it were allowable to insert sections in an act entirely foreign to the scope of the legislation as expressed in the title, the purpose of the Constitution would be entirely defeated and much legislation would be enacted that the members would not have approved had they known that it was contained in the act.

The defect in the title of this Act is very similar to the defect in the title of an Act considered in Board of Trustees v. Tate, 155 Ky., 296. In that case the title of the Act read: "An Act to empower the board of trustees of graded schools operating under special charters, known as Special Act Schools, to levy a tax for maintenance;" while in the body of the Act, after authorizing graded schools known as Special Act Schools to levy a tax of maintenance, the Act further provided that "All other graded schools of this Commonwealth" should be authorized to levy a tax for maintenance, and it was held that the body of the Act was limited by the title to Special Act Schools, and that so much of the Act as authorized all other graded schools to levy the tax was void as violative of sec. 51 of the Constitution.

In Henderson Bridge Company v. Alves, 122 Ky., 46, the Act under consideration was entitled, "An Act concerning the assessment and valuation for taxation of corporate franchises and intangible property by cities of the first and second class," while in the body of the Act the legislature extended its provisions to embrace cities of the third class, and it was held that so much of the Act as undertook to legislate concerning third class cities was outside the scope of the title and therefore void.

The case we have cannot be distinguished from these two cases, and being confident that these cases correctly interpret the meaning and purpose of sec. 51, they are controlling authority in support of the judgment appealed from.

It might further be noticed that in Washington v. Com., 143 Ky., 602; Calico v. Com., 145 Ky., 641; Henson v. Com., 148 Ky., 631, and Black v. Com., 154 Ky., 144, we had occasion to construe sections 13 and 14, now

subsection 19a of the Kentucky Statutes, but the attention of the court was not directed in any of these cases to the question presented on this appeal; consequently no reference was made to the validity of these sections, as their validity was not called in question; so that under these circumstances these cases cannot be considered as pertinent in determining the question raised in this case.

We think that the lower court correctly held that so much of the Act as is included in sections 13 and 14, now subsection 19a of the Kentucky Statutes, was violative of sec. 51 of the Constitution, and therefore void.

It follows from this that the judgment of the lower court should be affirmed, and it is so ordered.