## District Board of Tuberculosis Sanatorium Trustees of Fayette County v. Bradley, Mayor, et al.

(Decided June 8, 1920.)

### Appeal from Fayette Circuit Court.

1. Statutes—Subjects and Titles.—The courts have uniformly assigned as the reasons for the adoption of section 51, of the Constitution, the prevention of log rolling legislation, to protect legislators against voting for legislative measures, which contain provisions, of which the title to an act gives no notice, and to apprise the public by the publication made of the title of acts of intended legislation, that an opportunity may be had to have a hearing in opposition to vicious legislation, or such as affects their interests, before the legislation is made.

2. Statutes—Subjects and Titles.—The Constitution by section 51, thereof, has conclusively ordained, that the title to an act of the general assembly shall be an index to what is operative in the act.

3. Statutes—Subjects and Titles.—Where the language used in the title of an act restricts the scope of the legislation in it within certain limits specified in the title, any provisions outside of the limits prescribed are void, although such provisions might have been included with the matters in the act under a broader title.

ALLEN & DUNCAN for appellants.

W. H. TOWNSEND, HOGAN L. YANCEY, HENRY B. MILLER and JAS. A. WILMORE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This action involves the right of the District Board of Tuberculosis Sanatorium Trustees of Fayette County to require the mayor and commissioners of the city of Lexington, a city of the second class, to levy upon the taxable property, within that city, a tax, and collect the same, for the benefit of the tuberculosis district which is composed of Fayette county. The right to do so is based upon the provisions of section 2061a-15, of vol. 3, Kentucky Statutes. Pursuant to such provisions the District Board of Tuberculosis Sanatorium Trustees of Fayette County made a demand of the mayor and commissioners of the city of Lexington to levy, for its benefit, a tax upon the property of the inhabitants of the city for the year 1920, sufficient, when collected, to produce the sum of $27,032.79. The mayor and commissioners refused to levy or collect the tax required. The District Board of Tuberculosis Sanatorium Trustees thereupon instituted proceedings against the mayor and commissioners to secure a writ of mandamus which would require them to levy and collect the tax. The mayor and commissioners resisted the motion for the writ upon the ground that the act of the general assembly which authorized the demand for the levy of the tax and required them to make such levy and collect such tax was unconstitutional and void. The court sustained the contentions of the mayor and commissioners and denied the writ, and from the judgment the sanitorium trustees have appealed.

Several different grounds are relied upon as reasons for the invalidity of the statute, which authorizes the trustees of the sanatorium district to require the levy of the tax, and the mayor and commissioners of the city to make the levy and collect the tax, among which is that the statute was not enacted in conformity with the requirements of section 51 of the Constitution, and this objection to the validity of the statute will be first considered. Section 51, *supra*, is in part as follows:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, . . ."

The authority to require the tax levy, if such authority exists, is wholly by virtue of section 2061a-15 of Kentucky Statutes, vol. 3, and is a part of subsection 9, of section 4, of chapter 65, session acts 1918. That

part of the act of 1918 which constitutes section 2061a-15, *supra,* is as follows:

"Provided, however, that in a district wherein there is a county or counties, containing a city or cities of the second class, the district board of trustees shall annually estimate and, prior to December 31st, lay before the general council, or board of commissioners, of such city or cities, the need of such district for the site, erection and maintenance, or for improvements, additions and maintenance, or for the maintenance of the tuberculosis sanatorium for the succeeding year.

In order to raise such portion of this money as the board holds to be the equitable proportion for the city or cities for the purpose or purposes above set out, such general council or board of commissioners shall at the next succeeding levy cause to be levied and collected a tax of not less than two cents and not more than eight cents on each one hundred dollars of property assessed for taxation for city purposes, and said levy shall be included in the annual appropriation ordinance for that year  .  .  ."

The above quoted statute is a portion of chapter 63 of the session acts of the general assembly of 1918, and that enactment has a title which is as follows:

"An act relating to public health, repealing, amending and re-enacting sections 2054, 2059, 2060 and 2061 of the Kentucky Statutes, Carroll's edition of 1915, relating to the State Board of Health, creating bureaus within said board to perform the functions of the existing state tuberculosis commission, the hotel inspector, the pure food and drug division of the Agricultural Experiment Station, and for other purposes, creating county and district departments of health and providing and limiting appropriations of the State Board of Health and further defining its power and duties."

All provisions of the Constitution are mandatory, and the duty imposed upon the courts is to construe and enforce them in accordance with their meaning and purpose. The wisdom of a provision of the Constitution is a matter with which the courts, nor any other department of the government has any concern. Their wisdom, propriety and desirability were tried out before the sovereign tribunal of the people, when the great plebiscite for that purpose resulted in their adoption as the supreme law of the land which cannot be contravened by the legislative, judicial nor executive departments of

the government, and any act or thing which is undertaken to be performed contrary to its provisions, is void. Hence, any act of the general assembly which relates to more than one subject, or the title to which does not express the subject about which the legislation is attempted, is void. In construing the section of the Constitution, *supra,* to determine its applicability to any particular legislative act, the courts have looked to the purpose of its adoption and the evil sought to be remedied by it as guides and assistants to its interpretation. The courts have uniformly assigned as the reasons for its adoption, that log rolling legislation might be prevented and to protect the legislators from surprise and fraud by provisions in legislative measures, the titles to which give no notice of their contents, and might therefore be overlooked, or carelessly adopted and further to apprise the public of proposed legislation so that the usual publication of the proceedings of the legislative bodies would give notice to such persons as might read them, of the contents of the proposed legislative measures, in order that objectionable provisions might be opposed in a hearing for that purpose. These reasons will be found assigned for the adoption of the constitutional provision in a number of cases, among which are the Commonwealth v. Bassett, 171 Ky. 385; Smith v. Commonwealth, 175 Ky. 291; Bosworth, Auditor v. State University, 166 Ky. 436; Board of Trustees, etc. v. Tate, 155 Ky. 296; South v. Fish, 181 Ky. 349; Exall v. Holland, 166 Ky. 315.

The legislature in the enactment of a measure may make for it such a title as it chooses, and as said in Cooley's Constitutional Limitations, 212, the title of an act is "The conclusive index of the legislative intent as to what shall have operation" and the Constitution has so ordained it. The title may be general, and in such a state of case, any provision of the statute having a natural connection with the subject expressed in the title, and not foreign to it, satisfies the requirements of the Constitution. Johnson v. Higgins, 3 Met. 566; McReynolds v. Smallhouse, 8 Bush, 477; Com. v. Stow, 160 Ky. 260; Johnson v. City, 121 Ky. 194; Burnside v. Lincoln County Court, 86 Ky. 423; Conley v. Com., 98 Ky. 125.

The legislature may, however, make the title to an act as restrictive as it chooses, and, in that state of case, as said in 26 Am. & Eng. Ency. of Law, page 589,

"Where the language employed in the title is such as would lead a reasonable man to suppose that the legislature intended to restrict the scope of the act within certain limits specified in the title, such act is unconstitutional, so far as concern any provisions outside the limits thus marked out, even though such provisions might properly have been included in the act under a broader title."

Instances, in which this court has held legislation to be unconstitutional, on account of the restricted nature of the subject expressed in the title, excluding matters, which might have been germane to a broader title will be found in the cases of Board of Trustees v. Tate, 155 Ky. 296; Henderson Bridge Company v. Alves, 122 Ky. 46; Thompson v. Commonwealth, 159 Ky. 8; Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255; Burton v. Monticello Burnside Turnpike Co., 162 Ky. 787; Bosworth, Auditor v. State University, 166 Ky. 436; Exall v. Holland, 166 Ky. 315; Ogden v. Cronan, Sheriff, 171 Ky. 254; Houston v. Boltz, 169 Ky. 640; South v. Fish, *supra.*

In Wiemer v. Commissioners, etc., 124 Ky. 377, it was said: "The general assembly may, by the terms used in the title, restrict the scope of the act to as narrow a plane as they choose; and it follows that, if the title be too narrow and restrictive to embrace any part of the body of the act, to that extent the statute will be unconstitutional, although the different parts of the body are sufficiently cognate, as not to be inimical to the inhibition of the Constitution against placing more than one subject in an act." It was, in the same case, held that the relationship of the body of the act to the title, should be so "Natural and obvious that the ordinary mind will readily perceive it." These rules of construction of section 51, *supra,* have been referred to and approved in Ogden v. Cronan, *supra,* and South v. Fish, *supra.* With the above approved rules of construction and the reasons for the adoption of section 51, *supra,* in mind, the concrete question for determination presented by the instant case, is, does the title to the act of 1918 express the subject of the legislation embraced, in section 2061a-15, Kentucky Statutes, vol. 3, which is a provision of the act of 1918?

It will be observed, that the particular subject of legislation to be made by the act of 1918, as declared or expressed in the title, by reason of the language made

use of, is somewhat obscure and doubtful, but this court, in South v. Fish, *supra,* in which the validity of subsection 20 of the amendment to section 2061 of the act was considered, determined, that the proper reading of the title to the act of 1918, was as follows:

"An act relating to public health by repealing, amending, and re-enacting sections 2054, 2059, 2060, and 2061 of the Kentucky Statutes, Carroll's edition of 1915, relating to the State Board of Health, etc." In another place, in the same opinion, it was said: "By reading the title to this act one would naturally suppose that it related only to sections 2054, 2059, 2060 and 2061, Kentucky Statutes, and created the three boards therein specified." Whether a proper reading of the title would make necessary the insertion of the preposition "by" or the conjunction "and" or the insertion of both, preceding the words "creating bureaus within said board to perform the functions of the existing State Tuberculosis Commission, etc.," either would convey substantially the same meaning to one reading the title, and that would be, that the act contained legislation, which created a bureau, within the board of health to perform the functions of the then existing State Tuberculosis Commission, and would exclude the idea, that a bureau would be created to perform the functions of any district board of trustees of a tuberculosis sanatorium, unless, at least, the district board performed functions as an agency of the state commission. A reference to sections 2054, 2059, 2060 and 2061 of Kentucky Statutes, Carroll's edition of 1915, which the title of the act of 1918, in part, expressed as the purpose of the act to repeal, amend and re-enact, readily demonstrates, that neither of these sections treated of a tuberculosis sanatorium district, nor the duties, nor functions of the State Tuberculosis Commission or Commissioners, nor to taxation for the erection or maintenance of a tuberculosis sanatorium, and hence a reference by one, who might read or see a publication of the proposed legislation by its title would receive no intimation, that the legislation proposed under the title would or did contain any provisions providing for the creation of tuberculosis sanatorium districts or imposing taxes upon a city of the second class for the erection or maintenance of a tuberculosis district. Hence, if the legislation contained in the act of 1918, touching the subject of creation of tuberculosis sanatorium districts and the imposition of taxes for the erection

and maintenance of sanatoriums, is anywhere expressed in the title it is that portion of the title, which is couched in the following language:

"Creating bureaus within said board to perform the functions of the existing State Tuberculosis Commission." While, if it is conceded that the title of the act thus expresses, that the act contains legislation which will create a bureau within the board of health to perform the functions of the then existing State Tuberculosis Commission, one naturally and logically reading the title would understand that the legislation in the act purposed to create a bureau in the board of health for the purpose, and to transfer to it the powers and duties and functions which the State Tuberculosis Commission then had, but, he could not conclude, that the act contained legislation extending the powers of the bureau beyond those then had by the State Tuberculosis Commissioners, nor that it also embraced a scheme for the creation of districts for the erection and maintenance of tuberculosis sanatoriums, and adding to the powers of the trustees of such sanatoriums, including the power to require cities of the second class to levy and collect taxes at the behest of the trustees and for the benefit of the sanatoriums. The State Board of Tuberculosis Commissioners was not created nor dealt with by sections 2054, 2059, 2060 or 2061, of the Kentucky Statutes, 1915, but was created and all its functions defined by section 4711b and its subsections, of Kentucky Statutes, 1915, and was an act of the general assembly of the session of 1912. There is no intimation in the title to the act of 1918, nor in the provisions of the act, of any purpose to repeal section 4711b, *supra,* nor any of its subsections, and if such act or any part of it is repealed, it is by implication. If one reading the title to the act of 1918, should have examined section 4711b, *supra,* and its subsections, to have determined what functions that the act of 1918, was proposing from its title, to invest in the bureau to be created by it, he would have learned, that the board of tuberculosis commissioners was a corporate body, the duties of which chiefly consisted in investigating the cause and prevalence of tuberculosis and encouraging the efforts for its eradication and the publication of information in regard to it, but, without duties or powers touching the creation of tuberculosis sanatorium districts, or the levying of taxes for their erection or maintenance. He

would have found, that the duty and authority to levy taxes for the erection and maintenance of tuberculosis sanatoriums, was vested entirely in the fiscal courts of the counties, except in the instances where two or more counties were embraced in a district, the fiscal court of each county should appropriate its equitable portion of the burden of the maintenance of the sanatorium, to be ascertained under regulations to be prescribed by the tuberculosis commission. The creation of tuberculosis sanatorium districts was vested in the fiscal courts of the counties, or in the people of a proposed district to be expressed by their votes at an election to be held for that purpose. The only functions, which the board of tuberculosis commissioners, which is necessarily the same board, as is referred to as the State Tuberculosis Commission, had with reference to the creation and conduct of a tuberculosis sanatorium district, were that after the district was created, it should nominate persons to be trustees thereof, and from the nominations, the judge of the county court should appoint the trustees. The board of tuberculosis commissioners, also, had the right to select the site for a sanatorium in a district, and to recommend plans and specifications for the sanatorium, which it seems the fiscal courts were not obliged to accept, and it was, also, vested with authority to visit the sanatorium and prefer charges of misconduct or inefficiency against the trustees and employees thereof, before the authorities, which appointed them. The governing authority of the sanatorium was vested in its trustees, and these were without authority to require the fiscal courts to appropriate the sums it should designate for its needs and the fiscal courts had discretion in fixing the appropriation to the needs of the institution. Hence, it will be observed, that the board of tuberculosis commissioners were without authority, as well as the sanatorium district trustees, to apportion any portion of the needs of a sanatorium to a city of the second class within the district, and to require its authorities to levy or collect a tax for either the site, construction or maintenance of a sanatorium. The act of 1918, however, without any expression in its title of the subject of creating or maintaining tuberculosis sanatorium districts, or the powers or duties of the trustees of such a district, to estimate the needs for maintenance or otherwise and to certify same to the fiscal courts, or commissioners of a second class city; but by the use of the lan-

guage in the title which expressly limited the purpose
of the act with reference to tuberculosis to legislation
creating a bureau within the board of health to perform
the duties of the then existing State Tuberculosis Com-
mission, there was incorporated into the act, with other
legislation, with which we now have no concern, the sec-
tion 2061a-15, which authorized the district board of
tuberculosis sanatorium trustees, where the district con-
tained a city of the second class, in December of each
year, to estimate the needs of the district for the en-
suing year for the site, erection, improvements and
maintenance of the sanatorium, and to fix the equitable
portion, which such city should appropriate for such
purposes, and to lay same before the commissioners of
the city, who were required to levy a tax sufficient to
produce the sum demanded and to collect and
pay same to the sanatorium. No reasonable in-
terpretation of the title to the act of 1918 could
be made, . that would include such legislation with-
in the subject there expressed. The title of the
act, thus, limiting its scope to legislation affecting
the public health by repealing, amending and re-enacting
sections 2054, 2059, 2060 and 2061, *supra,* a reasonable
man would suppose by reading the title, that so far as
the amendatory legislation of those sections was in-
tended, that it would be legislation touching such mat-
ters as were reasonably and naturally connected, with
the subjects dealt with in those sections. The title, so
far as the subject of tuberculosis was expressed limited
the scope of the act to the creation of a bureau to which
the functions of the State Tuberculosis Commission
would be assigned. Section 2061, *supra,* to which the
legislation in controversy, here, was enacted as an
amendment, did not deal with the subject of tubercu-
losis, nor sanatorium districts, nor their creation, man-
agement nor maintenance, in any respect. Hence, the
powers conferred upon the trustees of the sanatorium
district and the duties of the commissioners of second
class cities with reference to the maintenance of sana-
toriums by the levying of taxes for that purpose, as set
out in section 2061a-15, Kentucky Statutes, vol. 3, was
beyond the limits marked out by the title to the act of
1918, and the subject of same was not expressed in the
title, although such legislation might have been included
in the act under a broader title without violating the
constitutional provision embraced, in section 51, of that

instrument, touching the requirement that a law enacted by the general assembly can relate to only one subject and that must be expressed in the title. It is unnecessary to consider any other objection to the validity of any of the provisions of the act.

The judgment is therefore affirmed.