CASE 47.—ACTION BY ROBERT F. WIEMER AGAINST THE COMMISSIONERS OF THE SINKING FUND OF THE CITY OF LOUISVILLE TO RECOVER CERTAIN LICENSE TAX.—January 22.

# Wiemer v. Comr's Sinking Fund of Louisville

124  377
f126  838

Appeal from Jefferson Circuit Court, Chancery Branch (Second Division).·

SHACKELFORD MILLER, Judge.

Judgment for defendants. Plaintiff appeals. Affirmed.

1.  Statutes—Title—Subject of Act—Licenses.—Acts 1904, p. 93, c. 33, entitled "An act to amend the revenue laws of cities of the first class so as to carry into effect the amendment of section 181 of the present Constitution," by section 2 repeals Ky. Stats., 1903, section 3011, providing for the

licensing of trades, professions, and the keeping of vehicles and other property enumerated, in addition to taxation under the ad valorem system. Const., section 181, provides that the General Assembly may authorize cities to adopt a license system in lieu of ad valorem taxation in raising local revenue. Held, that Acts 1904, p. 95. c. 33, section 2, is not germane to the title of the act, and therefore is in conflict with Const. section 51, providing that no law shall relate to more than one subject and that shall be embraced in its title; but, as that section has no natural connection with the remainder of the act, the validity of the remainder is not affected.

2.   Same.—The title to an act, in order to meet the constitutional requirement that an act shall not relate to more than one subject, which shall be embraced in the title, need not contain all the details of the body of the act; but the title should be so related to the body of the act as to naturally embrace it in the terms of the title.

LANE & HARRISON, CHANDLER & NORMAN and D. W. SANDERS, for appellant.

(No brief in record for appellant.)

A. P. HUMPHREY and A. E. RICHARDS, attorneys for appellees.

1.   The Statute approved February 19, 1906, entitled "An Act to enable cities of the first class to construct a comprehensive system for the disposition of sewerage," which authorizes the organization of a subsidiary corporation to plan and construct the sewers, is not such special or local legislation as is prohibited by section 59 of the Constitution.

2.   An ordinance drawn in compliance with section 159 of the Constitution should provide "for the collection of an annual tax sufficient to pay the interest on said indebtedness and to create a sinking fund for the payment of the principal thereof," by naming a fixed sum to be annually collected and appropriated regardless of the variable amount of property taxable for municipal purposes.

### AUTHORITIES CITED.

Carrollton Furniture Mfg. Co. v. The City of Carrollton, 104 Ky., 530; Richardson v. Mehler, 111 Ky., 426; Louisville School Board v. Superintendent of Public Instruction, 102 Ky., 394; Shoemaker v. Hodge, 111 Ky., 436; Wooley v. City of Louisville, 114

Ky., 556, 569; Louisville v. Wehmoff, 116 Ky., 813; City of Louisville v. Louisville School Board, 27 Ky. Law Rep., 209; Commissioners v. Louisville, 114 Ky., 571; Farson, Leach & Co. v. Board, 97 Ky., 119; Commissioners v. Grainger, 98 Ky., 319; Commissioners v. Zimmerman, 101 Ky., 432; Board of Park Commissioners v. DuPont, 110 Ky., 743; Walston v. City, 66 S. W., 385; Cooley on Taxation, vol. 1, 3rd Ed., 557; Pettibone v. The West Chicago Park Commissioners, 215, Ill., 313; Hodges v. Crowley, 186 Ill., 305; Cooley on Taxation, p. 597; City of East St. Louis v. Amy, 120 U. S., 600; Bassett v. City of El Paso, 88 Tex., 168, 30 S. W., 893; Mitchell County v. The Bank, 91 Texas, 261; Howland v. The Board of Supervisors, 109 Cal., 152; Epping v. Columbus, 117 Ga., 278; Village of Canandaigua v. Hayes, 85 N. Y. Sup., 494.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This is an action instituted by the appellant, Robert F. Wiemer (the plaintiff below), on behalf of himself and all others similarly situated, to recover of the Commissioners of the Sinking Fund of the City of Louisville certain license taxes paid on vehicles for the years 1904 and 1905, amounting in the aggregate to $75,000. The right of recovery is based on the theory that there was no authority in the charter of cities of the first class to support the ordinance under which the licenses were imposed and collected after the repeal of section 3011, Ky. Stat., 1903, by section 2 of the amending act adopted in 1904.

The first, and, from the view we have taken of it, the controlling, question in the case, is whether or not section 2 of the statute enacted by the General Assembly in 1904 is germane to its title. If the question must be answered in the negative, then the act is in contravention of section 51 of the Constitution, which, among other things, provides "that no law enacted by the General Assembly shall relate to more than one subject, and that shall be embraced in the title,"

and is therefore void, and the judgment of the chancellor dismissing the petition must be affirmed for that reason. The title of the act in question is "An Act to amend the revenue laws of cities of the first class so as to carry into effect the amendment of section 181 of the present Constitution." Acts 1904, p. 93, c. 33. As conducive to a clear understanding of the question about to be discussed, it is necessary to bear in mind that one of the most important principles of the Constitution as adopted in 1891 was the imperative requirement that the ad valorem system should be applied in all matters of taxation, whether State, county or municipal. In addition to the ad valorem system, revenue was permitted to be raised by licenses on occupations, incomes, etc. As to municipalities, the license system was especially provided for by section 181 of the Constitution. But the substitution of a license for the advalorem system was illegal under the Constitution. Levi v. City of Louisville, 97 Ky. 394, 16 Ky. Law Rep. 872, 30 S. W. 973, 20 L. R. A. 480. Under the Constitution as thus construed the city of Louisville adjusted its fiscal system to the property subject to taxation by it, applying the ad valorem system as was required by the fundamental law, and in addition it inaugurated and put in force a license system, by which to derive an income on various named callings, occupations, professions, and articles of property. Of necessity, such a system was most elaborate and extensive in its details, and we do not deem it necessary to more than generally allude to it, except in so far as it is absolutely necessary for a full comprehension of the question before us.

One of the departments of the fiscal system of Louisville is the "Commissioners of the Sinking Fund," a corporation established for the purpose of

receiving and collecting certain specified revenue and applying it to the payment of the principal and interest of the bonded indebtedness of the city as it falls due. Among the resources of the sinking fund are all licenses on trades, occupations, and professions, imposed in addition to the ad valorem system. A general power to impose these is provided in sections 2980 and 3012 of the Kentucky Statutes of 1903 (charter of cities of the first class), and specifically by section 3011. This last section contains a large number of named subjects of license, and provides a maximum and minimum therefor. Between the maximum and minimum provided by the statute the general council is permitted to exercise its discretion in fixing the amount of the license. That nothing subject to be licensed should be overlooked or omitted in the grant of power to the council, section 3012 was enacted, which substantially provides that any subject of license not specifically provided for in section 3011 may have an annual license imposed upon it of not less than $5 and not more than $5,000. Under this grant of power the general council of the city of Louisville ordained ordinances imposing license taxes upon all of the subjects of such a system of taxation, and applying the revenue arising therefrom to the purposes of the sinking fund. Among the things upon which a license tax was imposed were vehicles.

No question is, or can be, made of the validity of the collection of a license tax on vehicles from 1893, when the charter was enacted, to 1904, when the act in question went into effect. From the date of the decision in Levi v. City of Louisville, the merchants and manufacturers of the city of Louisville began an agitation in favor of an amendment to the constitution permitting municipalities, if they so desired, to adopt a license system in lieu of ad valorem taxation

in raising their local revenue. The final result of this was the adoption of an amendment to section 181 of the constitution which is as follows: "And the General Assembly may, by general laws only, authorize cities or towns of any class to provide for taxation for municipal purposes, on personal property, tangible and intangible, based on incomes, licenses or franchises, in lieu of an ad valorem tax thereon. * * *" It was to put this amendment in force that the statute of 1904, out of which grew this litigation, was enacted by the General Assembly. By the second section of the act of 1904, section 3011 of the Kentucky Statutes is repealed and re-enacted in all respects as before, except to omit the names of certain things and occupations theretofore required to be licensed. Among these are vehicles, and it is the sole contention of appellants that by this omission the general council lost the power to afterwards impose licenses on vehicles. Appellee, while not admitting that the omission deprives the city of the right to impose licenses on vehicles, insists that section 2 of the act of 1904 is unconstitutional, for the reason that it is not germane to the title of the act of which it is a part, and that, this being true, section 3011 remains as before, because an unconstitutional act, being void, has no effect whatever. So that we are thus confronted with the question whether the title of the act of 1904 is or not sufficiently comprehensive to embrace the subject-matter of section 3011, Ky. St. 1903.

The title of the act relates alone to such subjects of revenue of cities of the first class as were affected by the amendment of section 181 of the constitution. Section 3011 embraced only such licenses as were in addition to the ad valorem system provided originally by the constitution. These were entirely independent of the amendment of the constitution, which per-

mits cities to adopt a license system in lieu of the
ad valorem system, because they existed and were
perfectly valid before it was adopted.   The rule on
the subject in hand, in theory at least, is compara-
tively simple.   A title to an act is not, in order to
meet the requirements of the constitution, bound to
contain all of the details of the body of the act.   If
so, the title would necessarily be as extensive as the
body.   All that is required is that the body of the
act should be so related to the title as to be easily
and naturally embraced within its terms, or, as it
is sometimes said, they must be germane to each
other.   The relation should be so natural and obvious
that the ordinary mind will readily perceive it.   The
General Assembly may, by the terms used in the
title, restrict the scope of the act to as narrow a
plane as they choose; and it follows that, if the title
be too narrow and restrictive to embrace any part of
the body of the act, to that extent the statute will be
unconstitutional, although the different parts of the
body are sufficiently cognate as not to be inimical to
the inhibition of the constitution against placing
more than one subject in an act.

Cooley, in his work on Constitutional Limitations
(6th edition, p. 178), thus states the rule on this sub-
ject: "As the Legislature may make the title to an
act as restrictive as they please, it is obvious that
they may sometimes so frame it as to preclude many
matters being included in the act which might with
entire propriety have been embraced in one enact-
ment with the matters indicated by the title, but which
must now be excluded because the title has been made
unnecessarily restrictive.   The courts cannot enlarge
the scope of the title.   They are vested with no dis-
pensing power.   The constitution has made the title
the conclusive index to the legislative intent as to

what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the Legislature have not seen fit to make it so." 26 Am. & Eng. Ency. of Law (2d Ed.), p. 589, thus states the rule of the relation required to exist between the title and the body of a statute: "While it is true that a title expressing the general subject will cover a great variety of related matters, yet it cannot support a provision foreign to such subject. Therefore an act containing provisions neither expressed in or suggested by the title, nor germane nor cognate to the subject expressed therein—in brief, matters not reasonably to be anticipated under such a title—it is to that extent repugnant to the constitution. And the connection between the provisions of the act and the subject stated in the title must be so obvious that ingenious reasoning is not requisite to show it. It should be apparent to the ordinary intellect as well as to the trained legal mind. Where the language employed in the title is such as would lead a reasonable man to suppose that the Legislature intended to restrict the scope of the act within certain limits specified in the title, such act is unconstitutional so far as concern any provisions outside the limits thus marked out, even though such provisions might properly have been included in the act under a broader title. But, if the repealing clause professes to repeal acts dealing with a subject not expressed in the title or germane to the subject there expressed, it is to that extent invalid."

There is no such natural relationship between licenses on occupations imposed in addition to ad valorem taxes and a system of licenses imposed on personal property in lieu of ad valorem taxes as would lead the ordinary mind to conclude that a statute whose title was expressly limited to one might

also contain the other. On the contrary, expressly naming one of them in the title excludes the expectation of finding the other affected by the body of the statute. The statute in question, by its terms, seems to restrict the body of the act of 1904 to licenses imposed on personal property in lieu of the ad valorem taxes which, before the amendment, the constitution had imposed. That this substitution might take place was the sole purpose of the amendment of the constitution, and to make the substitution was all that was necessarily involved in an act putting the amendment in force. Suppose we turn the proposition around, and the title be made to read, "An Act amending the revenue laws of cities of the first class as to the occupation licenses imposed for the purposes of the sinking fund;" would any ordinary mind expect to find in the body of an act with this title a section relating alone to licenses imposed on personal property in lieu of ad valorem taxes? We do not think so. And yet this is the precise point involved in this litigation. The relationship between the two subjects is the same, whether considered from one or the other points of view.

Perhaps a case could not be found which better illustrates the danger of associating incongruous subjects in the body of a statute than the one under discussion. Here is a law, the main subject of which has no relation to occupation licenses, by which section 3011, Ky. Stat., 1903, which relates alone to such licenses, is repealed and at once re-enacted, omitting two or three subjects of license. That the omission was made by inadvertence appears from the fact that the beneficiaries of the omission did not know of it for two years after it took place, and continued during that time paying the annual license without protest.

vol. 124—25.

The sinking fund commissioners did not know of it, and continued to collect the licenses as before. So that we have the result that, because the title did not indicate the contents of the body of the bill, a change in the law in regard to the sinking fund is made, reducing its revenue some $75,000 per annum, without any of those interested in the change becoming aware of it for two years. In the same manner section 3011 might have been repealed without any part being re-enacted, and the city's credit entirely ruined.

The rule is that when a subject foreign to the title is introduced into the body of an act, if it is so separate and distinct from the remainder of the subject-matter of the legislation that it may be omitted without affecting the otherwise valid portions, then the unconstitutional part will be omitted and the remainder allowed to stand. Such is the case here. Section 2 has no natural connection with the remainder of the act. Its omission leaves a valid and complete statute; and therefore we hold that section 2 is invalid for the reason given, but the remainder of the statute is constitutional.

As this was the conclusion reached by the chancellor, his judgment is affirmed.