### Wood, et al. v. Commonwealth.

(Decided June 27, 1928.)

Appeal from Jefferson Circuit Court
(Criminal Division).

1. Constitutional Law.—Although presumption is in favor of constitutionality of a statute and it is duty of courts to uphold statute unless it is clearly repugnant to Constitution, courts, in considering constitutionality of an act, may not disregard plain command or necessary implication of fundamental law.

2. Statutes.—Under Constitution, sec. 51, title of a statute must be true index of what a statute contains, and so much of statute as is not indicated by its title is void.

3. Constitutional Law.—Courts cannot supply words "broker" or "owner" in body of Acts 1922, c. 106 (Ky. Stats., Supp. 1926, secs. 1376k-1, 1376k-2), relating to brokers receiving deposits while insolvent, since it is clear that Legislature purposely omitted such words.

4. Constitutional Law.—If statute is in contravention of constitutional provision, courts must declare it void, however great may be evil it is intended to curb or however wholesome may be its intended effect.

5. Statutes.—Acts 1922, c. 106 (Ky. Stats., Supp. 1926, secs. 1376k-1, 1376k-2), making it felony for grain, produce, cotton, or stock broker to receive deposits while insolvent, held to violate Constitution, sec. 51, because body of statute is broader than title, since word "broker," as used in title, does not refer to every one connected in any way with brokerage business whether as an owner or an employee, and employees are mentioned in the body of statute, and owners are excluded from penalty section, although included in title.

ARTHUR B. BENSINGER, JAMES P. EDWARDS, TRABUE, DOOLAN, HELM & HELM and BOOTH & CONNER for appellants.

J. W. CAMMACK, Attorney General, JAMES M. GILBERT, Assistant Attorney General, and W. CLARKE OTTE, GEORGE J. MAYER and JOS. S. LAWTON for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellants, George T. Wood and Richard V. Wood, two members of a three-member partnership consisting of Robert B. McDowell, George T. Wood, Jr., and Richard V. Wood, doing business as brokers under the firm name of George T. Wood & Son, were indicted and convicted in the Jefferson circuit court under chapter 106 of the Acts of 1922, being sections 1376k1, 1376k-2. Kentucky Statutes, 1926 Supplement; the punishment of each being fixed at confinement in the penitentiary for a period of a year and a half.

The firm became insolvent and its doors were closed on July 25, 1927. The record discloses that on that day the liabilities of the firm exceeded the assets by approximately $900,000. The particular transaction upon which the indictment was based was the receipt by defendants of a deposit of $2,000 in cash from one Horace McCrocklin as margin for the purchase of 100 shares of stock of the Underwood Typewriter Company at a time when they knew that they and the firm of which they were members were insolvent. The deposit was made on July 12, 1927, and on the same day appellants' directed their correspondent at New York to purchase the stock. McCrocklin received from them a confirmation of the purchase dated July 12, 1927. When the business was closed on July 25,

1927, the firm did not have the stock, but it appears it had been sold without an order from McCrocklin.

A more detailed statement of the facts is unnecessary for the purposes of this opinion. Numerous grounds for a reversal of the judgment are urged, but since we have reached the conclusion that the demurrer to the indictment should have been sustained, because the act of 1922, under which the prosecution in this case was instituted, violates section 51 of the State Constitution and is invalid, it becomes unnecessary to consider the other interesting questions raised by appellants, and ably discussed in briefs for both the appellant and the commonwealth.

Chapter 106 of the Acts of 1922, including the title to the act, reads:

"An act making it a felony for any grain, produce or cotton or stock broker, to receive deposits as margins, for the purchase of grain, produce, cotton or stock, from any person, firm or corporation, when it is known that said brokerage firm, corporation or individual is insolvent, and prescribing a penalty therefor.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"That any officer, manager or employee of any firm, corporation or individuals engaged in the brokerage business, as hereinafter defined, who shall receive or assent to the receiving of deposits in cash, securities or other things of value from any one, person, firm or corporation, as a customer or dealer, to be used as margins for the purchase of stocks, grain, produce or cotton or for the outright purchase thereof when such officer, manager or employee knows or has reasonable grounds for believing that such person, firm or corporation so engaged in the brokerage business is insolvent, shall be personally liable for such deposits or margins so received, and shall be guilty of a felony and upon conviction shall be punished by confinement in the penitentiary for not less than one nor more than ten years.

"A broker, within the meaning of the foregoing section, shall be any person, firm or corporation, who is engaged in the business of buying or selling stocks,

bonds, grain, produce or cotton, as the agent or representative of other persons upon margins and who charges commissions for their services.''

Appellants contend that section 1 of the act is not germane to the title thereof and is therefore in conflict with section 51 of the Constitution of Kentucky, the first clause of which provides that—

''No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title.''

This contention is sound. It is an elementary principle that the presumption is in favor of the constitutionality of a statute and it is the general duty of the courts to uphold any statute enacted in the ordinary exercise of the legislative power unless it is clearly repugnant to the Constitution. It was said in Aldridge v. Commonwealth, 192 Ky. 215, 232 S. W. 619:

''Whenever an act of the Legislature can be so construed and applied as to avoid conflict with the Constitution and give it the force of a law, such construction will be adopted by the courts.''

However, in considering the constitutionality of an act of the Legislature, the courts may not disregard the plain command or necessary implication of the fundamental law.

Section 51 of the Constitution has been before this court for construction in numerous cases, and we have uniformly held that the title must be the true index of what the act contains and that so much of an act as is not indicated by its title is void. Hunter v. City of Louisville, 199 Ky. 834, 252 S. W. 119. The purpose of the first clause of section 51 is to prevent misleading or deceiving the Legislature and the public as to the nature of an act by the title given it. The title should give fair and reasonable notice to interested persons of the nature of the provisions contained in the act. The subject expressed in the title may be broader or more comprehensive than the provisions contained in the body of the act, but when the title is restrictive, matters, not a part of or properly connected therewith, as it is fairly and reasonably understood, cannot be incorporated in the act without violating the constitutional provision. In Wiemer v.

Commissioners Sinking Fund of Louisville, 124 Ky. 377, 99 S. W. 242, 30 Ky. Law Rep. 523, it was said:

"A title to an act is not, in order to meet the requirements of the Constitution, bound to contain all the details of the body of the act. If so, the title would necessarily be as extensive as the body. All that is required is that the body of the act should be so related to the title as to be easily and naturally embraced within its terms, or, as it is sometimes said, they must be germane to each other. The relation should be so natural and obvious that the ordinary mind will readily perceive it. The General Assembly may, by the terms used in the title, restrict the scope of the act to as narrow a plane as they choose; and it follows that, if the title be too narrow and restrictive to embrace any part of the body of the act, to that extent the statute will be unconstitutional, although the different parts of the body are sufficiently cognate as not to be inimical to the inhibition of the Constitution against placing more than one subject in an act."

And the following from 26 Am. & Eng. Ency. of Law (2d Ed.) p. 589, was quoted with approval:

"While it is true that a title expressing the general subject will cover a great variety of related matters, yet it cannot support a provision foreign to such subject. Therefore an act containing provisions neither expressed in or suggested by the title nor germane nor cognate to the subject expressed therein—in brief, matters not reasonably to be anticipated under such a title—it is to that extent repugnant to the Constitution. And the connection between the provisions of the act and the subject stated in the title must be so obvious that ingenious reasoning is not requisite to show it. It should be apparent to the ordinary intellect as well as to the trained legal mind. Where the language employed in the title is such as would lead a reasonable man to suppose that the Legislature intended to restrict the scope of the act within certain limits specified in the title, such act is unconstitutional so far as concern any provisions outside the limits thus marked out, even though such provisions might properly have been included in the act under a broader title."

Bearing these principles in mind, we will examine the object of the act as expressed in the title to ascertain if the body of the act falls within its purview. According to the title the object of the act is to make it a felony for any grain, produce, cotton or stock broker to receive deposits as margins for the purchase of grain, produce, cotton, or stock when such broker knows he is insolvent. An inspection of the body of the act shows that it was the object of the act to make any officer, manager, or employee of any firm, corporation, or individual engaged in the brokerage business, liable both civilly and criminally for receiving deposits not only as margins for the purchase of stock, grain, produce, or cotton, but also for receiving deposits for the outright purchase thereof when such officer, manager, or employee knows, or has reasonable grounds for believing, that his principal is insolvent. It will be observed that the body of the act is broader than the title in many respects other than the one which we deem renders it invalid as a whole. No one would suspect from an inspection of the title that legislation as to the civil liability of a broker, much less his employee, would be incorporated in the act; nor does the title indicate that the act prescribes a penalty for receiving deposits under the circumstances named for the outright purchase of commodities or stock. The title purports to require actual knowledge of insolvency to fix responsibility, but in the body of the act responsibility is fixed when the employee either knows or has reasonable grounds for believing that his principal is insolvent. The act might be held unconstitutional as to the subjects above referred to which are clearly foreign to the title, and the balance allowed to stand, provided it was not invalid as a whole for the reasons hereafter pointed out. As was said in Wiemer v. Commissioners Sinking Fund of Louisville, supra:

"The rule is that when a subject foreign to the title is introduced into the body of an act, if it is so separate and distinct from the remainder of the subject-matter of the legislation that it may be omitted without affecting the otherwise valid portions, then the unconstitutional part will be omitted and the remainder allowed to stand."

Coming now to the crucial question in issue, the title to the act indicates a legislative intention to deal with

the subject "broker," while the body of the act deals only with officers, managers, or employees of firms, corporations, or individuals engaged in the brokerage business. It cannot be said the word "broker," as used in the title, refers to every one connected in any way with a brokerage business whether as an owner or an employee. The act itself clearly distinguishes between owners and employees. In the body of the act, broker is defined as:

"Any person, firm or corporation, who is engaged in the business of buying or selling stocks, bonds, grain, produce or cotton, as the agent or representative of other persons upon margins and who charges commissions for their services."

The word "broker" does not appear in the penalty section classifying offenders, and no one of the words, "officer, manager, or employee," appears in the title, and nothing in the title indicates that employees instead of owners are to be dealt with. The provision in the body of the act as to civil liability indicates the legislative intention to confine the act to employees. There being nothing in the title indicating an intention to hold employees of brokers criminally liable, the act is invalid as to them. Likewise the act is invalid as to owners who are clearly excluded from the penalty section of the act though included in the title. To render the act valid as to owners it would be necessary to interpolate the word "broker" or "owner" in the body of the act. In construing a statute words may be interpolated where it appears they were omitted by oversight, but such is not the case here. It is clear the Legislature did not intend the penalty section to apply to owners, and courts cannot supply words purposely omitted by the lawmaking body. Commonwealth v. Lipginski, 212 Ky. 366, 279 S. W. 339.

We are not unmindful of the presumption in favor of the validity of an act of the Legislature, and it is with the utmost reluctance that we declare invalid an act of the co-ordinate branch of the government; but if an act of the Legislature is in contravention of a constitutional provision, it becomes our duty to declare it void, however great may be the evil it is intended to curb, or however wholesome may be its intended effect. Being of opinion that the act in question violates section 51 of the Constitution and is invalid, it follows that the trial court erred in overruling the demurrer to the indictment.

The judgment is reversed and cause remanded for further proceedings consistent herewith.

The whole court sitting.