## City of Owensboro et al. v. Hazel et al.

(Decided May 31, 1929.)

R. MILLER HOLLAND, for appellants City of Owensboro and others.

BEN D. RINGO for appellants Anderson and O'Bryan.

GEO. S. WILSON, JR., and J. W. CAMMACK, Attorney General, for appellees.

ALLEN, BOTTS & DUNCAN and G. W. HUGHES and BEN BIEDENHARN, JR., amici curiae.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is a suit brought under the Declaratory Judgment Act to test the constitutionality of chapter 84 of the Acts of 1928, and, if it be held to be constitutional, to ascertain how in certain respects it should be interpreted. Both the plaintiffs and the defendants are frankly in entire accord that the act is unconstitutional. This, too, is the opinion of the Attorney General, who was duly notified of the pendency of this action, as required by section 9 of the Declaratory Judgment Act (Civil Code, sec. 639a9). Its constitutionality is being supported by the intervening petitioners, aided by the briefs amicorum curiae, who are interested in the disposition of this case, since many of the questions involved herein are vital to chapter 79 of the Acts of 1928, which provides for second class cities a city manager form of government much like that provided by chapter 84 here in question for third class cities.

Briefly summarizing its important provisions, we find that chapter 84 of the Acts of 1928 provides that any city of the third class may submit to its voters the question whether they wish the city to be governed by the city manager form of government or not. If the voters choose the city manager form, then the commissioners and mayor elect a city manager who holds his position subject to the will of the commissioners and the mayor. The act says that the city manager, when elected, shall be the executive agent of the mayor and board of commissioners in the management of city affairs. Under the act, the city manager selects and appoints all employees in the administrative service, and his judgment is unfettered. Heavy penalties are provided for any dictation, prevention, orders, or other interference on the part of the mayor or of any member of the board of commissioners with the administration of the city by the city manager. The mayor and commissioners can deal with the administrative service only through the city manager, and they are forbidden to dictate the appointment of any person to office. The city manager prepares the budget for the consideration of the mayor and the commissioners. Their annual appropriation ordinance must be based on the budget so submitted.

The act provides that the mayor shall preside at the meetings of the board of commissioners and perform

such other' duties consistent with his office as may be imposed by the board of commissioners. The act also provides that the mayor shall be recognized as the official head of the city for all ceremonial purposes, by the courts for the purpose of the service of civil process, and by the government for military purposes. In times of public danger or emergency, he may, with the consent of the board of commissioners, take command of the police, and maintain order and enforce the laws. Many of the provisions of the commission form of government for cities of the third class are adopted by reference in so far as applicable to the city manager form of government.

It is insisted that the act is unconstitutional, in that it violates sections 23, 51, 107, and 160 of the Constitution. This contention is divided into two categories, the first covering sections 23, 107 and 160 of the Constitution. If the contention in this regard be upheld, then it is impossible for a city to provide for the city manager form of government with such powers as are here vested in him by this act and to be exercised under the conditions set out in the act, unless such city manager be elected by the people for a term not exceeding four years. The second category covers only section 51 of the Constitution. This contention, if upheld, would not of itself make the city manager form of government as constituted in this act impossible, but would require a redrafting of the act, which candor compels one to say is not happily drawn, as counsel for the intervening petitioners admit in their brief.

1. Sections 23, 107, and 160 of the Constitution read:

"Sec. 23. The general assembly shall not grant any title of nobility or hereditary distinction, nor create any office, the appointment of which shall be for a longer time than a term of years."

"Sec. 107. The general assembly may provide for the election or appointment, for a term not exceeding four years, of such other county or district ministerial and executive officers as may, from time to time, be necessary."

"Sec. 160. The mayor or chief executive, police judges, members of legislative boards or councils of towns and cities shall be elected by the qualified voters thereof: Provided, The mayor or chief executive and police judges of the towns of the fourth, fifth and sixth classes may be appointed or elected

as provided by law. The terms of office of mayors or chief executives and police judges shall be four years, and until their successors shall be qualified; and of members of legislative boards, two years. When any city of the first or second class is divided into wards or districts, members of legislative boards shall be elected at large by the qualified voters of said city, but so selected that an equal proportion thereof shall reside in each of the said wards or districts; but when in any city of the first, second or third class, there are two legislative boards, the less numerous shall be selected from and elected by the voters at large of said city; but other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the general assembly may, by a general law, provide; but when elected by the voters of a town or city, their terms of office shall be four years, and until their successors shall be qualified.

"No mayor or chief executive or fiscal officer of any city of the first or second class, after the expiration of the term of office to which he has been elected under this Constitution, shall be eligible for the succeeding term. 'Fiscal officer' shall not include an auditor or assessor, or any other officer whose chief duty is not the collection or holding of public moneys. The general assembly shall prescribe the qualifications of all officers of towns and cities, the manner in, and causes for, which they may be removed from office, and how vacancies in such offices may be filled."

It is contended that under the city manager form of government, as provided by this chapter 84 the city manager is in fact the chief executive of the city, and that, being such, he must, under section 160 of the Constitution, be elected by the people. As the act provides for his appointment, it is therefore unconstitutional. It is further argued that, as the city manager holds at the will and pleasure of the mayor and commissioners, he has a term of office longer than a period of four years, which is forbidden by sections 23 and 107 of the Constitution.

The support of the argument that chapter 84 is, in the light of section 160 of the Constitution, invalid, rests on two fundamental assumptions: First, under section 160, where there is a mayor, he must be vested with such

executive and administrative functions as constitute him in fact the chief executive. This means that whether the mayor is the chief executive or not is not tested by the title he bears but by the duties and powers conferred upon him by law. Secondly, if executive or administrative powers and duties are vested in any official other than the mayor to such an extent as will in point of fact vest such official with more actual administrative authority than the law vests in the mayor, then such other official must be elected by the people, because he will be in fact, if not in name, the chief executive.

We cannot agree with either assumption. We are of the opinion that section 160 of the Constitution means that, where the charter of a city provides for a mayor, he must be elected by the people. Where it does not provide for a mayor, but for some other official to act in the place of the mayor, he, too, as the chief executive, must be elected by the people. The Constitution does not regulate what powers the Legislature may or must vest in the mayors of cities. The law-making body is free under the Constitution to confer upon him as much or as little power as in its wisdom it deems best. As a matter of fact, the charters of all of the various classes of cities of the commonwealth have, since the adoption of the present Constitution, vested large executive and administrative functions in city officials other than the mayor, and yet no one has contended that they either individually or as a group were the chief executives of the city.

The Governor is universally recognized as the chief executive of the state, and yet the Legislature has vested in other departments of the state government, notably that of the auditor, a great deal of executive and administrative functions. However, no one would contend that, by reason of this, the auditor was the chief executive of the state. The Constitution never meant to test whether an officer was the chief executive or not by the extent of the powers confided in him, for such a test would lead into interminable difficulties, bickerings, and disagreements as to when the line of demarcation had been overstepped. It contemplated only that there would be some head of the executive branch of the city government with such powers as the Legislature saw fit to confide in him; the extent being left open, as we have seen, by the Constitution. This head from time immemorial had been called the mayor, and so that term was used

in the Constitution. But, if for any reason the name of him who was the head of the executive branch of the city government and so, in common parlance, the chief executive, should be changed from that of mayor, then the Constitution wanted him to be elected by the people just as he would have been had he been called the mayor. The term "mayor or chief executive" in section 160 of the Constitution is then a description of the office and not of the character or extent of the powers confided to that office. Whoever is designated as the head of the executive branch of the city government must be elected as provided by section 160 of the Constitution, but that same Constitution in general leaves open to the Legislature the extent of the powers it may wish to confide to such mayor or chief executive.

The city manager form of government designates the mayor as the head of the executive branch of the city government. True, his powers are greatly curtailed, but the extent, of the curtailment is not forbidden by any section of the Constitution. As the city manager is not the o*ucial head of the city government, but that position is confided to another, it is not necessary under section 160 of the Constitution that he be elected by the people. We are of the opinion, then, that chapter 84 of the Acts of 1928 does not violate section 160 of the Constitution.

Nor does it violate sections 23 and 107 of that instrument. In the case of Kratzer v. Commonwealth, 228 Ky. 684, 15 S. W. (2d) 473, in discussing these sections of the Constitution with reference to whether an examiner appointed by the court pursuant to section 559 of the Civil Code, which provides that, when so appointed, he shall hold office subject to the pleasure of the court, was still in office after the expiration of four years from the date of his appointment, we said:

> "As applied to office the word 'term' speaks with reference to the office itself, and not to the tenure of the incumbent. Barrett v. Duff, 114 Kan. 220, 217 P. 918. It means the fixed period of time during which an officer or appointee is entitled to hold the office, perform its functions, enjoy its privileges and emoluments (State v. Knight, 76 Mont. 71, 245 P. 267), and does not apply to appointive offices held at the pleasure of the appointing power (City

of Lexington v. Rennick, 105 Ky. 779, 49 S. W. 787, 50 S. W. 1106, 20 Ky. Law Rep. 1609, 1924; Speed v. Crawford, 3 Metc. 207; Bayley v. Garrison, 190 Cal. 690, 214 P. 871; State v. Oklahoma City, 38 Okl. 349, 134 P. 58; Wilson v. McCarron, 112 Me. 181, 91 A. 839; Stone v. State, 18 Ala. App. 228, 89 So. 824). Here the officer is removable at the pleasure of the court. Though, unless sooner removed, he may hold longer than four years, there is no fixed time during which he may claim the office as a matter of right, and therefore no term for a longer period than four years.

"We are therefore constrained to the view that an appointment of an examiner, to hold office at the pleasure of the court, does not offend the foregoing provisions of the Constitution, and that his right to the office continues until he is removed, and does not end at the expiration of four years from the time of his appointment."

The city manager, under chapter 84 of the Acts of 1928, holds office at the pleasure of the body which elects him, the mayor and board of commissioners. Hence he has no term which violates the sections of the Constitution upon which appellees rely. The act is therefore not unconstitutional on that ground.

II. Section 51 of the Constitution reads:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

As stated in Allen v. Cromwell, 203 Ky. 836, 263 S. W. 356, under section 51 of the Constitution, (1) the subject of an act must be single, though the details of that subject may be legion, so long as they are all germane and relate to the subject, and (2) that subject must be expressed in the title. The title to chapter 84 of the Acts of 1928 is: "An Act to enable cities of the third class to adopt and operate under the city manager form of government, and amending section three thousand four hundred and eighty b-three of Carroll's Kentucky

Statutes, one thousand nine hundred and twenty-two edition.''

It will be noted that the title expressly states that the act proposes to amend section 3480b3 of the 1922 Edition of Carroll's Kentucky Statutes. That section is section 3 of chapter 92 of the Acts of 1914 providing for the commission form of government for cities of the third class. Section 3 of chapter 84 of the Acts of 1928 in part reads:

> ''That section three thousand four hundred and eighty b-three of Carroll's Kentucky Statutes, one thousand nine hundred and twenty-two edition, be amended by repealing all of said section and re-enacting in lieu thereof the following.''

Then follows the provisions for the machinery for taking the sense of the voters as to whether they wish to be governed by the city manager form of government or the commission form of government, as the case may be. This machinery is not essentially different from that provided for by section 3 of chapter 92 of the Acts of 1914, save in one important respect. Under the commission form of government, the salaries of the mayor and commissioners must be fixed between a minimum of $500 per year each and a maximu of $2,200 each. Kentucky Statutes, 1922 Edition, sec. 3480b11. The actual amount of the salary these officers are to receive must be stated in the petition calling for the election provided for by section 3 of chapter 92 of the Acts of 1914, Kentucky Statutes 1922 Edition, sec. 3480b11.

Section 3 of that act, being Kentucky Statutes, sec. 3480b3, 1922 Edition, provides that, in submitting to the voters the question whether they wish to adopt the commission form of government or not, the amount of the salaries proposed to be paid to the mayor and commissioners shall be stated. By sections 4 and 5 of chapter 84 of the Acts of 1928, the salary of the mayor may not exceed $750 and the salaries of the commissioners may not exceed $500 each when the city is under the city manager form of government. Section 3 of chapter 84 of the Acts of 1928 omits entirely any requirement that in submitting to the voters whether they wish to adopt the city manager or commission form of government, as the case may be, the voters shall be informed as to what salaries the mayor and commissioners are to re-

ceive. If the question submitted to the voters is whether the commission form of government is to be adopted or not, section 3 of chapter 84 of the Acts of 1928 makes a very important change in section 3 of chapter 92 of the Acts of 1914 by omitting the requirement of the statement to the voters of what salaries the mayor and commissioners are to receive.

Now there is no difficulty about the title of chapter 84 of the Acts of 1928 not giving due notice that section 3480b3 of the 1922 Edition of Carroll's Statutes is to be amended. So far as the title is concerned, this part is of equal dignity with that part which states that the act is to enable cities of the third class to adopt the city manager form of government. Section 3480b3 of the 1922 Edition has nothing to do with the city manager form of government. It deals exclusively with the commission form of government. And so the title of chapter 84, if expanded, would, in effect be "An Act to enable cities of the third class to adopt the city manager form of government and to amend the commission form of government of cities of the third class."

However, if the act itself does not go to the extreme limits of the title, perhaps it may be saved by eliminating part of the title as surplusage, as was done in Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008, which we shall presently discuss. An analysis of the amendment as it appears in the body of the act, however, shows that it not only covers the machinery of election to take the sense of the voters as to whether they wish to adopt the city manager form of government, but also makes an important change in the machinery of election concerning the adoption of the commission form of government. There can be no escape from this conclusion, as section 3480b3 of the 1922 Edition of the Statutes is expressly repealed, and the present provisions of section 3 of chapter 84 of the Acts of 1928 are enacted in lieu thereof. The same result would be reached, however, if the words "expressly repealed" had not been in section 3. It is plain that the Legislature meant that section 3 of this chapter 84 should take the place of section 3 of chapter 92, supra, and so chapter 92 would be repealed by implication anyhow. Section 3 of chapter 84 dealing with the commission form of government as well as the city

manager form is within the title, and supports the title; but it is multiple in its nature, as is the title, since both the title and this section 3 deal with both forms of government. Being multiple, the section is in violation of section 51 of the Constitution which forbids an act to deal with more than one subject. It cannot be argued successfully that the real subject of the act here is ''city government,'' for the title to the act instead of being that broad, as perhaps it might have been, is restrictive in its nature to certain dissimilar forms of government.

It has been repeatedly held that, if the Legislature chooses a restrictive title to an act, then the body of the act must conform to the title as thus restricted although, had the title been broader, parts of the act, invalid because of the restrictive title, might have been sustained under a broader title. Thus in Thompson v. Commonwealth, 159 Ky. 8, 166 S. W. 623, the title which read: ''An Act to appropriate money for the benefit of the Houses of Reform, to provide funds to pay the existing deficit and to make improvements at the Houses of Reform,'' was held not to be sufficiently broad to cover provisions in the act providing for the confinement of juvenile offenders in the House of Reform, which, therefore, were declared to be invalid, although, had the title read: ''An Act relating to the House of Reform,'' such provisions might have been saved. To the same effect is South v. Fish, 181 Ky. 349, 205 S. W. 329.

The case of Bowman v. Hamlett, supra, decided twelve days after the Thompson Case, supra, and so confidently relied upon by those seeking to uphold the constitutionality of this act, is not in conflict with these views. There the body of the act expressly did not repeal the act of 1910 in so far as it affected certain classes of cities, although the title read: ''An Act creating a state text-book commission to adopt for use in the common schools of Kentucky a uniform series of text-books, regulating the price thereof, defining the powers and duties of said commission, and the method of selection of such text-books and their distribution, prescribing penalties for the violation of this act, and repealing Chapter 13, of the Acts of the General Assembly of Kentucky, approved March 15, 1910.'' Acts 1914, c. 11.

It was held that so much of the title as read: ''Repealing chapter 13 of the acts of the General Assembly

of Kentucky, approved March 15, 1910,'' was surplusage, and that the body of the act served only to repeal so much of the act of 1910 as the act in question was in conflict with the 1910 act. But that is not this case. Section 3 of chapter 84 of the acts of 1928 expressly enacts the present provisions of section 3 in lieu of section 3480b3 of the 1922 Edition of the Statutes. It is not a question of striking surplusage from the title. There is no surplusage in the title, for the act does exactly what the title says it is going to do, to-wit, amends a section of the Statutes dealing with the commission form of government by its repeal and a substitution of other provisions in lieu thereof which deal with the commission form of government as well as the city manager form. Section 3 of chapter 84 is plainly invalid, as it deals with more than one subject, as did the acts involved and held invalid in so far as they were multiple in the Thompson and South Cases, supra, as well as those involved in Bosworth v. State University, 166 Ky. 436, 179 S. W. 403, L. R. A. 1917B, 808; Burton v. Monticello & Burnside Turnpike Co., 162 Ky. 787, 173 S. W. 144; Board of Trustees of Erlanger Graded Common School District v. Tate, 155 Ky. 296, 159 S. W. 777, and many others which might be cited.

However, it is true that, although section 3 of chapter 84 be thus multiple, yet if it may be dissolved into its constituent parts, and these separated from each other, and one eliminated without defeating the legislative intention, that part should be stricken and the rest allowed to stand. Wiemer v. Commissioners' Sinking Fund of Louisville, 124 Ky. 377, 99 S. W. 242, 30 Ky. Law Rep. 523. But section 3 of chapter 84 is expressly enacted to take the entire place formerly occupied by section 3480b3. This purpose is as fully expressed in the title as the purpose to create the city manager form of government. It was just as plainly the legislative intention to amend the commission form of machinery of election as to provide for the city manager form of such machinery. In providing how the question should be submitted to the voters as to whether they would adopt the city manager or commission form of government, as the case might be, the Legislature copied almost literally the method prescribed by section 3 of chapter 92, but with the important omission of the statement of

salaries when the commission form of government was the subject of the election.

The Legislature meant to amend section 3 of chapter 92, for it expressly said so in the title as well as in the body of the act. This purpose, so far as the act shows, was of equal dignity with the other purposes of the act. Now it could hardly have been the legislative intent to do away with the existing machinery for taking the sense of the voters as to whether they wished to adopt the commission form of government or not without providing some other machinery for that purpose. That it was not is demonstrated by the fact that the Legislature did insert in this very section 3 of chapter 84 provisions for just such machinery. If we should eliminate these provisions from section 3, then the commission form of government would, like Mohamet's coffin, be suspended in midair, with no way to put it into effect. Such was expressly not the legislative intent. We are therefore not authorized to disregard the provisions in section 3 of chapter 84 relating to the commission form of government, and, as long as they remain in section 3, it is invalid, because it then relates to more than one subject.

Section 3 of the act being invalid, the whole act must fail, despite section 16 thereof, which reads: "The provisions of this act shall be severable, and if any of the provisions shall be held to be unconstitutional, the decision of the court shall not affect the validity of the remaining provisions", since without section 3 there is no way to put the rest of the act into effect. See Felts v. Linton, 217 Ky. 305, 289 S. W. 312.

The act being invalid, it is not necessary to discuss how it should be interpreted in the respects set out in the petition.

The judgment of the lower court holding the act unconstitutional is therefore affirmed.

Whole court sitting, with Judges Clay, Logan, and Willis dissenting from so much of the opinion as holds the act unconstitutional because in violation of section 51 of the Constitution.